THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS C. EHLE, Plaintiff in Error.

*Opinion filed April 20, 1916—Rehearing denied June 16, 1916.*

1. CRIMINAL LAW—*distinction between larceny and embezzlement.* The distinguishing element of the crime of larceny is the taking and carrying away or asportation of the property the subject of the larceny, while in the crime of embezzlement the property is lawfully in the possession of the accused by reason of some fiduciary relation between the accused and the owner.

2. SAME—*when the crime of larceny is complete.* The crime of larceny is complete if there is a taking and carrying away from the owner, of his money or property with a felonious intent, although the money or property taken is afterwards restored or recovered or the owner recompensed.

3. SAME—*when crime of embezzlement by agent is complete—conversion.* Strictly speaking, the crime of embezzlement by an agent, under section 75 of the Criminal Code, is complete when there is a fraudulent conversion by the accused of money or property of his employer; but, as a general rule, there is a conversion only when there has been a refusal, or at least a failure, to pay, or there are circumstances from which such failure can be implied.

4. SAME—*when attorney is not guilty of embezzlement under section 75 of the Criminal Code.* An attorney is not guilty of embezzlement, under section 75 of the Criminal Code, if he has an interest or part ownership in the funds or until there has been an accounting and a demand and refusal to pay over the amount due from him to his client.

5. SAME—*when a conviction for larceny cannot be sustained.* A conviction for larceny cannot be sustained where the evidence shows that the defendant was an attorney at law employed on a salary by a law firm; that a case for the recovery of money was turned over to him; that he prosecuted the suit and finally settled the case and received a check payable to himself and the client; that he indorsed the check with both names and deposited the money in his own account and subsequently checked it out; that he informed the law firm of the collection, and that a member of the firm subsequently paid the whole amount to the client and charged the attorney's account therewith, and that the client had made no complaint nor any demand for the money.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

GLENN E. PLUMB, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, GEORGE P. RAMSEY, DANIEL G. RAMSAY, and JOHN PRYSTALSKI, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Plaintiff in error (hereinafter called the defendant) was indicted at the June term, 1914, of the criminal court of Cook county. A motion to quash the indictment was overruled and the defendant was put upon trial before a jury at the September term, 1915, of said court. The indictment originally consisted of seven counts, all of which were dismissed by the State's attorney except the first, third and sixth. The first count charged the defendant with larceny as bailee of one check for $615.41, the property of Sarah A. Burns. The sixth count charged larceny of the property of Sarah A. Burns. The State's attorney stated on the trial that he did not rely on either the first or sixth count and would not claim a conviction under them but refused to enter a *nolle prosequi* as to these counts and they were submitted to the jury. A conviction could not have been sustained under either of these counts anyway. (*Kibs* v. *People,* 81 Ill. 599.) The third count, which was the only count relied upon for the conviction of defendant, charged him with embezzlement as agent in the employ of Sarah A. Burns, without the consent of his employer, of a check for the amount of $615.41, alleged to be the property of Sarah A. Burns. The jury found the defendant guilty of larceny. Motions for a new trial and in arrest of judgment were overruled, judgment was entered on the verdict and the defendant was sentenced accordingly. He has sued out a writ of error to reverse the judgment of the criminal court.

Defendant has assigned numerous errors on the record, any one of which, if well taken, would justify a reversal of the judgment against him. We deem it necessary to con-

sider but two of the questions raised by the assignments of error, viz.: (1) That the verdict of the jury and judgment of the court are contrary to the law and the evidence; (2) that Miss Burns was paid in full by Henry Veeder, a member of the law firm with which the defendant was associated, and the money so paid was deducted from the amount owing defendant, and that Miss Burns was fully paid without any deduction for services or costs due defendant and she released her claim.

The circumstances leading up to the indictment of the defendant, as shown by the evidence, were as follows: Defendant is an attorney at law and has been practicing in the city of Chicago since 1893. In 1901 he became associated with the law firm of Albert H. and Henry Veeder, who were attorneys for Swift & Co. and other packers. By arrangement with this firm he began with a salary of $2500 a year and was to handle such business of the firm as they required, and in addition thereto was allowed to take other law business for himself if it did not interfere with his devoting the necessary time to the business of said firm. This arrangement continued until March or April, 1914, at which time he was receiving from the firm $8000 a year as salary. In 1909 Sarah A. Burns was the holder of seven shares of stock in the Swift & Co. corporation, and Mary J. Kelly, her sister, with whom Miss Burns made her home, was the owner of five shares. Five of the shares of stock of Miss Burns had been indorsed by her and loaned to a relative but had been returned to her but her indorsement remained on the certificates. The entire twelve shares of stock were stolen by a young man living at the home of Mrs. Kelly. He indorsed the shares not already indorsed by forging the signatures of the holders and the twelve shares were sold and the proceeds converted by him. Miss Burns and Mrs. Kelly failing to receive their dividends due on the stock in July, 1909, started an investigation and the facts in regard to the theft came out. Officers of Swift

& Co. interested themselves in recovering this stock for the owners, and on the advice of these officers Mrs. Kelly and Miss Burns placed the matter in the hands of the defendant as attorney, who brought suit in attachment in the municipal court of Chicago for each of them against the firm of brokers who had handled the stock and the suits were tried. He succeeded in collecting $800 from the man who stole the stock and from his relatives, with which, on the direction of Mrs. Kelly and Miss Burns, he bought seven shares of Swift & Co. stock, of which he turned over five shares to Mrs. Kelly and two shares to Miss Burns, the balance in cash, about $80, being turned over to Mrs. Kelly. It appears that the two sisters kept their stock together. Mrs. Kelly was in better circumstances, financially, than her sister, and for that reason was anxious to have her sister reimbursed first, and while five of the shares recovered through the settlement were taken in the name of Mrs. Kelly, the dividends on these shares, as well as on the two shares bought in the name of Miss Burns, were thereafter paid to the latter, and it was understood that she was to eventually own these shares if she did not recover in the suit started by her. The shares were not put in her name outright because the suit of Miss Burns for the shares of stock on which the indorsements were genuine was still pending and undetermined. That suit was tried. Miss Burns was defeated in the municipal court, but the defendant, as her attorney, took the case to the Appellate Court, where the judgment was reversed and the cause remanded.

The Burns case was pending in the courts several years. In December, 1913, after the judgment was reversed by the Appellate Court, M. D. Follansbee, attorney for the brokers, and the defendant, representing Miss Burns, after some negotiations agreed on a settlement. In making the settlement proposed by Follansbee, as attorney for the brokers, the defendant consulted with Mrs. Kelly, and evidently un-

derstood, and had good reason for thinking, that the pro-
ceeds of the suit were to belong to her and not to Miss
Burns. He telephoned to her about the proposed settlement,
and it being satisfactory to her, it was decided to accept
the amount offered by Follansbee, $615.41. Accordingly,
on December 12, 1913, Follansbee mailed the defendant his
check, payable to defendant and Sarah A. Burns, with re-
ceipts in triplicate covering the amount, and the terms of
the settlement between the parties. The defendant tele-
phoned to Follansbee and asked him if he desired the in-
dorsement of Miss Burns on the check, and he replied that
it was not necessary. Follansbee testified that the check was
made payable to the defendant and Miss Burns, jointly, so
the former could retain from the amount his fees for his
services. The defendant indorsed the check with the names
of Sarah A. Burns and of himself and deposited the check
to his account in the Merchants' Loan and Trust Company
Bank and subsequently checked this money out. The de-
fendant had received no fees, and no costs had been paid
by either Mrs. Kelly or Miss Burns. The defendant tes-
tified that he informed Albert H. Veeder of the outcome
of the suit, and the latter stated that the fees he had earned
would have to be adjusted and that the work he had done
was worth all he had recovered. The defendant regarded
the suit as one that came to him in his usual course of busi-
ness as an attorney. Henry Veeder testified that while the
defendant did all the work in the matter and in connection
with the suit and the appeal and settlement the business
was business of the Veeder firm, and that they were pri-
marily working for Swift & Co. and secondarily for Miss
Burns and Mrs. Kelly. The defendant did not inform Miss
Burns or Mrs. Kelly that he had made this collection. In
fact, he never talked with Miss Burns after making the
collection and before he was indicted. He talked with Mrs.
Kelly once, and also with Mrs. Hull, her daughter, in which
conversations he informed them, in substance, that he ex-

pected to settle the matter shortly. In March, 1914, the defendant wrote a letter to the secretary of Swift & Co. to the same effect, giving the details of the litigation and stating that he expected to have the matter settled in a few days.

About this time, for some reason not disclosed by the record, defendant was having considerable difficulty with Henry Veeder, the surviving member of the Veeder firm, and in April ceased his connection with the firm. Albert H. Veeder had died some time before. It appears there has never been a final settlement between the defendant and the Veeder firm, the defendant claiming that the firm owed him and Henry Veeder claiming that the defendant was indebted to the firm. The firm was withholding salary and other money due the defendant when the check was collected. The defendant had suffered a severe injury in the fall of 1913 by falling and striking his head on a stone step, from which he was laid up for seven weeks and was apparently in poor health for several months thereafter. On April 9, 1914, he left Chicago for the purpose of recuperating his health, it being the first time in five years that he had taken a vacation, and returned some time in May. Henry Veeder had also been advised by the defendant that he had made this collection. Henry Veeder seems to have considered that the firm of Veeder & Veeder were attorneys in the matter together with the defendant and that the firm was liable to account to Miss Burns for the collection. On April 27, 1914, during the absence of the defendant, Veeder gave Miss Burns a check for the full amount of the collection ($615.41) and took a general release from her. Neither Miss Burns nor anyone else had ever made a demand on the defendant for the proceeds of this collection, and, in fact, the first knowledge that Miss Burns had that her claim had been paid by the brokers who were the defendants in her suit, was when Henry Veeder paid her. Veeder deducted the amount he paid Miss Burns from the salary due the defendant, or charged it against him, or con-

sidered it a proper charge. His testimony on that point is somewhat vague and contradictory. He was asked if he had deducted this amount from defendant's salary when he left their office. He replied: "What balance was due him on salary was applied to that—this and other indebtedness. His salary was applied to that liquidation, so far as it would go,—to this and other matters,—and when he left he was very much in my debt as yet." He further testified that they never had a full settlement; that they had had a settlement on March 3; that he did not charge up his account with the amount of the Burns collection; that the amount coming to defendant was applied on other matters. He shortly afterwards laid the matter before the State's attorney and went before the grand jury, with the result that the defendant was indicted. It further appears that neither Miss Burns nor Mrs. Kelly made any complaint and were satisfied with the way in which their matters had been handled and were loath to prosecute the defendant, and that Miss Burns refused to be a witness against him until she was threatened by the State's attorney with attachment proceedings to compel her attendance at the trial. The defendant was the only witness in his own behalf.

As to the merits of the case, the defendant had acted as attorney for both Mrs. Kelly and Miss Burns. He testified that Mrs. Kelly was the real party in interest, and she does not deny it. There was some confusion about the ownership of this money and a question as to the proper party with whom to account. It was his duty to report the collection of this amount promptly and take steps to ascertain and pay it over to the parties entitled to it, either Mrs. Kelly or Miss Burns, and he was wrong in not so doing. He had talked the matter over with the head of the Veeder firm, and later with Henry Veeder, and made no secret of having the money. It may be that he did not report the collection to Miss Burns for the reason that there were fees and costs and the ownership of the money to be

adjusted. If the Veeder firm was responsible for the money as the attorneys for Mrs. Kelly and Miss Burns, or jointly responsible as associate attorneys with the defendant, the surviving member of the firm, Henry Veeder, paid it and charged it to the defendant or would charge it to him on a final settlement, and the only thing of which the defendant could be accused would be delay in paying over the money he had collected. This money was collected for Miss Burns. It was in the defendant's hands. Conceding that the defendant, or the Veeder firm and the defendant, were liable to Miss Burns for the money or a part of it, the money was paid to Miss Burns and a general release was given by her before she made any demand for the money or any complaint, and she did not know it had been collected by the defendant until it was paid to her.

Counsel for defendant in error argue that the offense was complete when the defendant received the money, deposited it to his account in the bank and checked it out, the same as if he had committed a larceny of property, which would be complete when the property was stolen and carried away although subsequently returned or paid for. He is not charged with taking and secreting the check or proceeds thereof with intent to embezzle or fraudulently convert the same to his own use without the consent of the owner, but with actually embezzling and converting to his own use the said check without the consent of the owner. There is a distinction between embezzlement and larceny. The distinguishing element of the latter crime is the taking and carrying away or asportation of the property the subject of the larceny. In embezzlement the property is lawfully in the possession of the accused by reason of some fiduciary relation between the accused and the owner. The crime of larceny would be complete if there was a taking and carrying away from the owner, of his money or property with a felonious intent, although the money or property taken was afterwards restored or recovered or the owner

recompensed. Under section 75 of the Criminal Code, under which the defendant was indicted, strictly speaking, the crime of embezzlement is complete when there is a fraudulent conversion by the accused of money or property of his employer without his consent. Generally, there is a conversion only where there has been a refusal, or at least a failure, to pay, or there are circumstances from which such refusal or failure can be implied. Whether there has been such conversion would, of course, depend upon the facts and circumstances of each particular case, the exact nature of the relation between the parties, the contract of employment or agency and the course of dealing of the parties with each other. Even under section 75 an agent would not be guilty of embezzlement if such agent had an interest in or part ownership of the funds involved, or until an accounting had been had and a demand and refusal to pay the amount due from such agent to his principal. (*McElroy* v. *People,* 202 Ill. 473.) We are referred to no case, and are aware of none, where a person has been held to be guilty of embezzlement of money in which he has an interest, if the owner has been paid the money alleged to have been embezzled and has given a general receipt and release before any demand or any complaint has been made. The defendant had possession of the check and money, it is true. He testified that he was always ready and willing to account and pay this money over. It was not a large sum, and there is no evidence or circumstance shown to dispute the testimony of the defendant on this point or from which it can necessarily be inferred that Miss Burns would not have received her money any time she made a demand for it. Under the circumstances, was there any conversion of the property of Miss Burns or any embezzlement from her? In *People* v. *Allison,* 68 Ill. 151, which was an information for disbarment, this court refused to consider a charge against an attorney for refusing to pay over money collected by him, it appearing that the money had long before

been paid to the party entitled, who had made no complaint, and there was a dispute as to the attorney's fees, and it was held that if the party to whom the money belonged was satisfied, it was no concern of the relator, who was a stranger. Neither is there anything showing any criminal intent on the part of the defendant to steal or embezzle the check in question or the proceeds, or convert the same to his own use, beyond the mere fact that he had it and failed to promptly report his having it to the parties in interest. He was unquestionably a lawyer of ability and was entrusted with large and important interests. The amount involved in this case is comparatively small. He was making regularly upwards of $8000 a year in the practice of his profession. He had been steadily advanced and was the attorney for large concerns that are able to employ, and do employ, the best legal talent. While it does not necessarily follow that a lawyer so circumstanced would possess honesty equal to his ability, it is improbable that the defendant should have gone out of his way to deliberately embezzle the insignificant amount with which he is charged in this case. Neither Miss Burns, the nominal party in interest, nor her sister, Mrs. Kelly, who was apparently the real party in interest, desired to prosecute the defendant nor did they make any complaint. They received their money after some delay. It makes little difference whether the Veeder firm were the attorneys for Miss Burns or whether the defendant was acting independently of them. If he took the suit independently for himself he was clearly entitled to fees, and he was not liable to indictment for embezzlement of this money, or to disbarment, until after a demand had been made upon him for the amount and a tender made of his reasonable fees and expenses. But no demand was ever made. If he was not acting as attorney for Miss Burns in collecting the money in question then the entire case against him would fall. He could not be guilty of embezzlement, under the statute, unless he came into

273 — 28

possession of the money as attorney or agent and unlawfully converted it to his own use. The relation of principal and agent was a necessary element to constitute the crime charged.

Attorneys at law must maintain a high standard of honesty, but when accused of crime they are entitled to a fair trial and cannot be convicted except according to the established rules of procedure and the law in such cases made and provided. The defendant was not so convicted and the judgment must be reversed.     *Judgment reversed.*