**UNITED STATES of America,**
**Plaintiff,**

v.

**Isidor WOLRICH, Defendant.**

United States District Court,
S. D. New York.

Feb. 8, 1955.

See also D.C., 127 F.Supp. 215.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of N. Y., New York City, for plaintiff, Richard Owen, Asst. U. S. Atty., New York City, of counsel.

Corcoran & Kostelanetz, Louis Bender, Arthur Block, New York City, for defendant, Arthur Block, Boris Kostelanetz, Louis Bender, Jules Ritholz, New York City, of counsel.

DIMOCK, District Judge.

Defendant, for a second time, moves for reargument of a motion to suppress evidence alleged to have been obtained from him under a consent to a search of his records and papers alleged to have been obtained by fraud.

In my decision of the original motion, which is reported at D.C., 119 F. Supp. 538, I held, in substance, that an income tax examiner's representation that the examination was a "routine audit" was not such a fraudulent representation as would vitiate the consent that defendant's books and papers be examined. I said that a statement that the purpose of an investigation was a "routine audit" was not the equivalent of a promise that only civil liability would be considered regardless of what the examination revealed. The Government's affidavits in opposition to the original motion contained statements that the investigation had resulted from the fact that examination of other tax-

payers' affairs had revealed that checks to the order of defendant in very large amounts had been cashed rather than credited to any account. Nevertheless, the same affidavits were to the effect that such an examination was a "routine examination" and that it often appeared that the cashing of checks for large amounts was a legitimate business practice. There was presumably, therefore, no reason why defendant should have been advised of any extraordinary character of this particular investigation. This state of facts did not indicate to me that defendant, even if he had been told that the examination was a routine examination, had been in any way misled, so the motion was denied.

No new facts were shown on the first motion for a reargument.

After my denial of the motion for reargument, the case was tried. The trial resulted in a disagreement of the jury and this second motion for reargument was then made. Defendant now says that material was elicited on the trial which indicates that the investigation, at the time of the alleged statement that it was only routine, was of a character very different from a mere check-up to see whether checks which had been cashed were properly recorded in defendant's books. Defendant's position evidently is that under such circumstances the Internal Revenue Department, instead of assuming that examination will show that there was a legitimate business reason for the cashing of the checks, presumes that such an examination will disclose evidence indicating criminality. The new evidence consisted of the official manual of instructions of the Internal Revenue Department. From this and from the testimony of the revenue agents, it appears that, when the alleged statement was made that the examination was a rou-

tine one, it was part of what was denominated in the manual a "Joint Investigation" conducted by a special agent, who is stated to be responsible for the criminal features of the case and for the procurement of proper proof to establish the criminal charge should the prosecution be authorized, and a revenue agent, who is responsible for the audit features of the case and for the preparation of the record of the proof to support the ad valorem addition to the tax. It was the Revenue Agent rather than the Special Agent who was alleged in this case to have made the statement that the examination was a routine one.

Weighing against the Revenue Agent's statement to the substantial effect that the examination was commenced without the expectation of finding evidence of fraud or criminality, is the fact that the manual, in paragraph 675, prescribes the procedure to be followed where an Internal Revenue Agent discovers what he believes to be indications of fraud. If the Internal Revenue Agent in Charge concludes that the findings of the Internal Revenue Agent indicate probable fraud, he will then request the consideration of the Special Agent in Charge as to the necessity for a Joint Investigation. If the Special Agent in Charge decides to investigate, he "will * * promptly assign to the case a special agent". From this it appears that a Joint Investigation is one that is initiated when probable fraud is indicated.

Upon this record, it seems to me that I can no longer, as I have in the past, rest upon the conclusion that the examination was a routine examination. I will therefore hear evidence at a time to be fixed at the convenience of the parties and the court on the question whether the consent to the examination of defendant's books and records was obtained by fraud.