**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Arthur WINSTON and Jean Ford,**
**Defendants,**

**Arthur Winston, Appellant.**
**No. 11310.**

United States Court of Appeals,
Seventh Circuit.

May 17, 1955.

Samuel Grossman, Max M. Grossman, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill.,

Frank J. McGarr, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

The principal argument presented by the appellant in this case questions the sufficiency of the evidence to sustain the finding and judgment of the trial court that the defendant, Arthur Winston, was guilty, as charged in counts 4, 5 and 6 of the indictment, of violations on March 25, 1953, of Sections 2553(a) and 2554 (a) of Title 26 U.S.C.A. and Section 174 of Title 21 U.S.C.A. These counts charged that on said date the defendant Winston and his codefendant, Jean Ford, purchased heroin which was neither in nor from the original stamped package; that on that date these two defendants sold the heroin to one Francis Bonotto, which sale was not in pursuance of a written order of the person to whom it was sold; and that these defendants on the same day knowingly received, concealed, bought and facilitated the transportation of the heroin knowing the same to have been imported into the United States contrary to law.

Francis Howard Bonotto, a Government witness, testified that on March 24, 1953, he called the defendant Winston by phone; and that he had had previous dealings with Winston, knew his telephone number and recognized Winston's voice when he answered the phone. Bonotto said that he told Winston he was interested in purchasing some heroin; that Winston told him to call back later in the evening; that, pursuant to Winston's direction, the witness called him again and asked Winston when he could pick up the "merchandise" they had talked about before; and that Winston then told him to "come in about an hour."

Bonotto testified that when these calls were made Narcotics Agents Abraham and Newey were in his (Bonotto's) apartment with him and heard his end of the conversations. The witness said that he was furnished Government money with which to purchase the heroin; that he was searched by the agents to see that he had nothing else on his person; that he and his girl friend and the two agents then went over to 3440 West 18th Street, to the apartment of Jean Ford; that on his arrival at that address Jean Ford answered the door and said that "Artie" (Winston) had gone out but would be back shortly and that Bonotto should wait for him at the corner of 18th and Trumbull Streets; and that after a few minutes Jean Ford came to him (Bonotto), told him that the "neighborhood was hot," and said that he should wait across the street. Bonotto said that about 45 minutes later Winston came to him; that he gave the price for the heroin to Winston who told him he would have to wait about 15 minutes longer; that in a few minutes Jean Ford again came to him and told him that "Artie" had returned and that he (Bonotto) should come back to the apartment. The witness said that when they arrived at the apartment Artie Winston answered their knock and gave a package containing heroin to Jean Ford who in turn, gave it to Bonotto.

Bonotto also testified that the following events occurred on March 25, 1953. Bonotto about 4:00 P. M., in the presence of the two Narcotics Agents, again called the Winston-Ford telephone number. Jean Ford answered the phone and Bonotto asked her if he could make another purchase from "Artie." She told Bonotto to give her the order and that she would give "Artie" the message or take care of it herself. Bonotto then told her that he wanted to buy an ounce of heroin, and she told him to call back about 7:30. When Bonotto called back Jean Ford told him that arrangements had been made for him to pick up the heroin and that he should come over about 8:00 or 8:30. Bonotto took with him the $300 which the Narcotics Agents had given him to pay for the purchase of the narcotics. The two agents and Bonotto then drove in a Government car to the vicinity of 3440 West 18th Street and just before they arrived there they let Agent Newey out at the

corner. Agent Abraham parked the car across the street from the apartment and Bonotto proceeded to the apartment. When Jean Ford answered his knock Bonotto gave her the $300 and she then asked him to wait across the street, where he had waited the night before, until arrangements could be made. She said that she would contact "Artie" and that then Bonotto could pick up the package. A few minutes later Jean Ford came back across the street and told Bonotto that he could pick up the package at 18th and Trumbull under a city road block. Bonotto proceeded to the place indicated, found the package and then returned to the Government car where he gave the package to Agent Abraham. As Bonotto was about to get into the Government car Winston drove up, asked Bonotto who that was in the car with him and insisted that in the future Bonotto should always come alone. Agent Abraham then started talking to Winston and told him there was a shortage in the package of heroin, that he did not want Bonotto as the middleman but wanted to do business directly with Winston. Winston said he thought "that could be arranged and in the future he would do business with him direct." Abraham then asked Winston if he had any "merchandise" with him, and Winston said that he did—in the back of his automobile. As they parted Winston signaled to Abraham that everything was all right and said, "Call me again."

Much of Bonotto's testimony was substantially corroborated by Abraham and Newey, the Narcotics Agents. After his arrest Winston, in the presence of Abraham and Newey, admitted that he had purchased narcotics for his girl friend, Jean Ford, but denied any other connection with narcotics.

Jean Ford, the appellant's codefendant, admitted her acquaintance with Bonotto. She testified that they had procured and used narcotics together in her apartment; that they had had numerous telephone conversations; that she recognized Bonotto's voice over the phone; and that she had procured and sold to Bonotto one-half ounce of heroin on March 24, 1953, and an ounce on March 25, 1953. However, she denied that she had received the narcotics from Winston or that she had given Winston any of the money for the narcotics. She testified that she was present when Agent Abraham talked to Winston about wanting to deal directly with him, but said that Winston at that time denied having anything to do with narcotics and told Abraham that he would have to see her.

The defendant Winston, as a witness in this case, also denied having had any connection with the narcotics which were purchased by Bonotto from Jean Ford. There were conflicts between the testimony of Winston and of Jean Ford as to the intimacy of their relationship.

█ We have in this case serious conflicts between the testimony of the defendants and the testimony of the witnesses for the Government. We also find some conflicts and some contradictions between the testimony given by Government Witness Bonotto on direct examination and his testimony on cross-examination. However, we must consider the evidence in the light most favorable to the Government and in the light of all reasonable inferences which the trial judge might draw from the evidence. In doing this we find that the trial judge here could reasonably infer and find that both of the defendants, Winston and Ford, were involved in the purchase, sale and concealment of the heroin as charged in counts 4, 5 and 6 of the indictment.

The appellant also attacks the judgment on the ground that, according to the testimony of Agent Abraham, Winston, in answering Abraham's charge that he was not getting good measure on orders which came through Bonotto said: "Well, I don't know what Fran [Bonotto] has been doing with his stuff but I have been giving him a good count on it, of course, after it leaves me I don't know what he does with it; I am not respons-

ible for what he does." The appellant contends that this was an extrajudicial admission made to a Government agent and was not sufficient to sustain a conviction in the absence of any other independent proof of the commission of the offense by the accused.

In the first place, this is not the type of admission which comes within the protection of the rule concerning extrajudicial admissions or confessions. When the appellant made this statement he did not know that Bonotto was making the purchases of narcotics for the Government. Winston made this statement only to defend himself against the charge of a customer that his purchases through Bonotto from Winston had been short weight. This was not an admission coerced or improperly induced by police or Government officials. Nor was this a statement or admission by a defendant under such pressure by police investigators that his statement might reflect the strain or confusion resulting from such an investigation. Here Winston was only trying to convince his customer that he was conducting an "honest" business in narcotics. But even if this had been a statement protected by the rule on extrajudicial admissions, there was here clearly enough " * * * independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused. Cf. Parker v. State, 228 Ind. 1, 88 N.E.2d 556, 89 N.E. 2d 442." Smith v. United States, 348 U.S. 147, 156, 75 S.Ct. 194, 199.

The defendant Winston, according to testimony which the trial court had a right to believe, appeared in these transactions too often and too intimately. The trial judge was furnished substantial evidence from which he could reasonably infer that Winston was the real principal in procuring and selling to Bonotto the heroin as alleged in counts 4, 5 and 6 of the indictment.

The judgment is

Affirmed.