UNITED STATES of America, Plaintiff-Appellee,

v.

Sam ACHILLI, Defendant-Appellant.

No. 11575.

United States Court of Appeals Seventh Circuit.

June 5, 1956.

Rehearing Denied July 31, 1956.

Carl J. Batter, Washington, D. C., Frank J. Gagen, Jr., Chicago, Ill., for appellant.

Charles K. Rice, Asst. Atty. Gen., Dickinson Thatcher, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Vincent P. Russo, Atty., Department of Justice, Washington, D. C., for appellee.

Before MAJOR, LINDLEY, and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant appeals from a judgment entered on a jury verdict finding him guilty on three counts of an indictment charging willful evasion of income taxes for the taxable years 1946, 1947 and 1948, in violation of Section 145(b) of the Internal Revenue Code of 1939, 26 U.S.C.

The Government employed what is commonly referred to as the net worth method of establishing deficiencies, proceeding on the theory that increases in the taxpayer's net worth over that at the beginning of the taxable year, plus nondeductible expenditures, constituted income to the taxpayer during that period unless satisfactorily explained. Employing this procedure, the Government calculated the amount of defendant's net taxable unreported income during the indictment periods at $13,803.94 in 1946, $36,958.63 in 1947 and $20,623.18 in 1948. It offered evidence tending to prove that the income was derived from over-ceiling charges for automobiles sold by a co-partnership composed of defendant and one Gromer, doing business under the name and style of Highland Motor Sales, and Barney's Snooker Hall, owned by defendant until the latter part of 1946, and from interest on loans to various persons.

With respect to the operation of Highland, on the evidence, the jury was justified in finding the following pertinent facts. During the three years, defendant, or his agents, made sales of automobiles at premium prices of about $600 per car above the OPA maximum price. The ceiling price of each car was entered

upon the partnership books, and only this amount was reflected in the partnership returns. The black market premium was not recorded or reported. These premium sales seem to have been concealed from defendant's co-partner, Gromer; they were not reported in his individual income tax returns.

Defendant complains of some 19 remarks of counsel excerpted from the record, contending that misconduct of the United States Attorney requires a reversal of the judgment. The first was made during the course of reception of the Government's testimony. Defendant's attorney objected to the use of certain records in the examination of a Government witness, asserting that they were admittedly false. The Government's attorney remarked, "And we are going to show they are false because you made them false." On objection, this remark was stricken.

The other 18 instances occurred during the course of final argument to the jury. Of these, objection was made to only two. "Counsel for the defense cannot as a rule remain silent, interpose no objections and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." United States v. Socony Vacuum Oil Co., 310 U. S. 150, 238, 60 S.Ct. 811, 84 L.Ed. 1129. That principle must govern the sixteen asserted instances of misconduct, unless the remaining contentions disclose misconduct of a flagrant nature resulting in a pattern of prejudicial impropriety. We think no such pattern is shown.

We do not condone the prosecutor's unqualified statement that all defense witnesses were unwilling witnesses, responding only to subpoena. However, defendant's objection to the remark was sustained and the remark stricken. And in addition to such curative action, the court instructed the jury that oral summation was no part of the evidence and was not to be considered in arriving at a verdict.

The second remark to which objection was taken related to the terms of a purchase contract. The Government introduced evidence showing that defendant had bought the entire interest of one Turpin, including the realty, equipment and stock of goods in the Red Lion, a local restaurant and bar, in 1945. In his closing argument the United States Attorney, in summing up defendant's beginning net worth, referred to this transaction as including a transfer of the capital stock of Red Lion, Incorporated, when, in fact, the agreement between Turpin and defendant included no reference to capital stock. Defendant's objection to this statement was overruled.

Although counsel's reference to the capital stock was unwarranted, it was an invited response to defense counsel's assertion and argument to the jury that the value of the corporate stock had been omitted from defendant's opening net worth statement. The record discloses the existence of a corporation known as Red Lion, Inc., of which defendant was an officer, and shows that the board of directors, in February, 1948, authorized and directed the officers of the corporation to enter into a lease with defendant of the premises on which Red Lion was located. We are directed to nothing of record which indicates when or by whom Red Lion, Inc., was incorporated, or who owned its corporate stock.

The Red Lion transactions are silent in this respect. Defendant's purchase agreement of the property recited that the seller, Turpin, agreed to convey the real estate, fixtures and stocks of liquors and goods to defendant in consideration of $18,400. In 1948, defendant transferred to one Fritzel an undivided ½ interest in all the chattels, fixtures, liquor and licenses. An attached schedule showed that the value of the stock of merchandise was $10,796.71 and that the sale price of ½ thereof was $5,398.30. Neither transaction alluded to corporate ownership of any of the property and each item was fully reflected in the Government's net worth computation.

Upon the capital gains schedule of defendant's 1948 tax return, notations as

follows were entered with respect to an item listed as "Sales of stock in Red Lion": acquired 1945, at a cost basis of $4,673.18; sold 1948 at a sales price of $5,894.85. In cross-examination of Government's witness Weber, defense counsel interpolated "capital" into this entry immediately preceding the word "stock", and questioned him as to where the value of the "capital stock" was reflected upon the Government's computation of net worth at the beginning of the taxable periods. Counsel took the same approach in his summation to the jury, arguing that the cost base of this item, $4,673.18, should be set up as an asset omitted from the opening net worth computation. The context of the United States Attorney's argument shows conclusively that his reference to the value of the corporate stock as included in the $18,400 purchase price paid to Turpin was in response to the argument by defense counsel.

Each party was arguing for an inference not supported by the record. The accountant who prepared the 1948 return testified that the capital gains entries thereon were based upon the transaction between defendant and Fritzel. The word "stock" in that entry, therefore, takes its meaning from the contract of the parties to the transaction, which, in this respect, purports to convey only a stock of merchandise in inventory. If counsel for the Government went outside the record in the respect noted, the excursion was in response to an opposing venture *de hors* the record by the defense. The error, in overruling the objection was inconsequential, especially in view of the instructions to which allusion has previously been made that oral summation is no part of the evidence.

■ Government counsel may, at times, have been an overzealous advocate. In most of these instances, his remarks went in without objection, as we have noted. When his argument to the jury is considered as a whole, we think that the excerpts extracted from context for our attention present for the most part nothing more than zealous advocacy, see Di Carlo v. United States, 2

Cir., 6 F.2d 364, certiorari denied 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168, and, in any event, that they can not be classified as misconduct requiring reversal. As we said in United States v. Doyle, No. 11528, 7 Cir., 234 F.2d 788, 796, quoting from Malone v. United States, 7 Cir., 94 F.2d 281, 288, certiorari denied 304 U.S. 562, 58 S.Ct. 944, 82 L.Ed. 1529; " 'Counsel have a right to make any argument based upon evidence proven in the case, or which may be reasonably inferred therefrom, and to make reply to that made by opposing counsel, and, in doing so, statements may be made which otherwise would be improper. Defendant's trial counsel evidently did not regard the argument as vicious or unfair as objection was made to one statement only * * *.' " We think the situation wholly unlike the instances of misconduct appearing in the cases relied upon by defendant. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; N. Y. Central R. Co. v. Johnson, 279 U. S. 310, 49 S.Ct. 300, 73 L.Ed. 706; Pierce v. United States, 6 Cir., 86 F.2d 949; Volkmor v. United States, 6 Cir., 13 F.2d 594.

■ Defendant's contention that the net worth evidence was incompetent and inadmissible misconceives the purpose of the provisions of Section 41 of the Internal Revenue Code of 1939, 26 U.S.C. (1952) § 41. He insists that, before the net worth method may be employed in any income tax case, Section 41 requires a determination by the Commissioner of Internal Revenue that use of that method "does clearly reflect the income" of the accused taxpayer; that the Commissioner did determine defendant's income for the indictment years by adjustments to the income reported, and that therefore, the net worth method of proof may not be employed in this prosecution, absent proof that the Commissioner has made the alleged requisite determination.

We think it clear that Section 41 has the limited purpose of insuring that, in an administrative deficiency assessment, the taxpayer's accounting method shall

be employed by the Commissioner in the allocation of income and expense items between taxable years. Holland v. United States, 348 U.S. 121, 131, 75 S.Ct. 127, 99 L.Ed. 150. But that section can have no application in a criminal proceeding which is not based and does not depend upon an administrative determination. Therefore, the cases dealing with the validity of administrative orders upon which defendant relies are inapposite. See e. g., Morgan v. United States, 298 U. S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Brown v. Helvering, 291 U.S. 193, 54 S. Ct. 356, 78 L.Ed. 725; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538; Willapoint Oysters, Inc., v. Ewing, 9 Cir., 174 F.2d 676, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L. Ed. 527; Southern Garment Mfg. Ass'n v. Fleming, 74 App.D.C. 228, 122 F.2d 622.

■ These cases obviously have no application to this proceeding, based upon three counts of an indictment returned by a grand jury. It is wholly immaterial that the indictment was preceded by an administrative tax deficiency determination against defendant. Such proceeding was a civil matter, the validity of which must be determined civilly. Here the Government had the burden of proving the charges made in the indictment beyond a reasonable doubt, and, for this purpose, as in any other criminal prosecution, the admissibility of tendered evidence was to be determined by established rules of evidence. The question of admissibility is not affected by the fact, nature, or validity of a prior administrative determination touching the same subject matter.

■ The contention now made is not unlike that urged in Holland v. United States, 348 U.S. 121, at page 132, 75 S. Ct. 127, at page 134, that Section 41 restricts the Government's use of the net worth method of proof in criminal prosecutions to those cases where it is shown that the taxpayer has no books or that his books are inadequate, a contention rejected in this language: "To protect the revenue from those who do not 'ren-

der true accounts', the Government must be free to use all legal evidence available to it in determining whether the story told by the taxpayer's books accurately reflects his financial history." The legality of the net worth evidence is not affected by what the Commissioner has, or has not, done in a civil matter. To read such a restriction into Section 41 would thwart the intent of Congress. "The existence of unreported income may be proved by any practical method available in the circumstances of the particular situation." United States v. Doyle, No. 11528, 7 Cir., 234 F.2d 788, 793; Davis v. United States, 6 Cir., 226 F.2d 331, 336, certiorari denied 350 U.S. 965, 76 S.Ct. 432.

■■ Defendant argues also that the net worth method, as here employed, lacked probative value and should not have been presented to the jury. Government exhibit 280, the summary of the relevant net worth computations, showed an understatement of income for each of the taxable years as follows: for 1946, $13,803.94, for 1947, $36,958.63, and for 1948, $20,623.18. The probative value of this evidence is attacked, defendant asserting that certain specific assets were omitted by the Government in computing defendant's opening net worth and that other specific items were improperly included as assets in the net worth computations for the year 1948. To the extent that these contentions represent merely a suggestion that we weigh conflicting testimony, they fall within the postulate stated in United States v. Winston, 7 Cir., 222 F.2d 323, 325, that "we must consider the evidence in the light most favorable to the Government and in the light of all reasonable inferences which the [jury] might draw from the evidence." United States v. Iacullo, 7 Cir., 226 F.2d 788, 795, certiorari denied 350 U.S. 966, 76 S.Ct. 435; United States v. Yager, 7 Cir., 220 F.2d 795, certiorari denied 349 U.S. 963, 75 S.Ct. 895, 99 L.Ed. 1285. We can only conclude that the evidence supports the verdict; that we cannot say that the challenged evidence, as a matter of law,

lacked probative weight sufficient to take the case to the jury.

The Government concedes the merit of defendant's contention that the value of a brick residence, which was sold by defendant in 1946, was erroneously omitted from the opening net worth computation. The capital gains schedule of defendant's tax return for the latter year states that that property was acquired by defendant in 1945 at a cost basis of $11,000. Since this is the only evidence of record with respect to the time when defendant acquired this property, the sum should, as the Government concedes, have been included as an asset in the computation of defendant's net worth as of December 31, 1945. This omission, however, affects only Count I. Since the total unreported income for the year 1946 by the computation most favorable to the Government is an amount of approximately $13,800, only, we feel that this omission must have resulted in serious prejudice to defendant as to the charges of Count I. When employing the net worth method, the Government must prove, beyond a reasonable doubt, "that a substantial amount of tax liability has been willfully averted." United States v. Doyle, No. 11528, 7 Cir., 234 F.2d.788, 794; Sasser v. United States, 5 Cir., 208 F.2d 535. The result of this omission was to interject into the proof as to Count I an erroneous figure which would reduce the evidence tending to prove "a substantial" evasion of tax liability to that which would support a maximum finding of willful evasion in an amount only slightly exceeding $2,800. The error accounts for almost 80% of the deficit shown by the Government's computation. We can only speculate as to whether the jury would have found a substantial evasion for that year. We think an error of this magnitude in a computative total of less than $14,000 necessarily prejudiced defendant. The judgment as to Count I is reversed.

The last mentioned item was fully reflected in the net worth computations going to the proof of the charges of Counts II and III; consequently, we think the other contentions of error in this respect are without merit.

Defendant asserts that certain oil well investments in the amount of $5,000, and the value of the capital stock of Red Lion, Inc., in the amount of $4,673.-18 were erroneously omitted from the opening net worth computation. What we have said with respect to the Red Lion stock in reviewing the contention as to misconduct of Government counsel disposes of this item. The entries upon defendant's 1946 tax return which are said to support the assertion that defendant acquired "Capital stock" in 1945 were an obvious reference to a stock of goods in inventory. The record is silent as to the existence or ownership of Red Lion corporate shares. With respect to the oil well investments, the evidence is in conflict. The record contains positive testimony that defendant acquired these assets in 1947, and the jury could have resolved this question against defendant. The review of conflicting evidence is beyond the scope of our function.

Defendant also objects to items included as assets in the closing net worth which allegedly were liabilities. There is, however, conflicting testimony with respect to each of them. We might well conclude our review on this note, but we think it wise to refer briefly to the evidence as to these transactions.

The first is a $12,000 item which grew out of a $35,000 cashier's check held by defendant at the end of the taxable year 1948. This check, issued by the Union National Bank and Trust Company of Elgin, was payable to defendant, his wife and one Gordon. The named persons signed a promissory note payable to Union in the amount of $23,000. In computing defendant's net worth at the close of 1948 the $35,000 check was included as an asset and the $23,000 note as a liability. Defendant contends that this computation does not reflect a related transaction in which defendant borrowed the $12,000 representing the difference between the Union note and the check from the First National Bank. The record includes positive testimony

that Union issued the check on consideration of the $23,000 loan and $12,000 cash paid by defendant. Gordon testified that he supplied none of the funds for the purchase of the check and that the latter was used to relieve the obligation of the note. One witness testified that First National was a participant in this transaction to the extent of $12,000. The record clearly shows that Union recorded the transaction as a $23,000 obligation. Gordon testified that he had not executed a note in favor of First National, and no record of such a transaction was produced.

There was also a conflict of testimony with respect to a $7,500 transaction between defendant and one Affeld and another in which Gromer purchased a $15,000 cashier's check payable to defendant, which the latter endorsed and delivered to Gordon as a loan. Both transactions occurred in 1948. With respect to the Affeld transaction, there was a dispute as to whether the $7,500 represented a loan actually made or whether it was a mere commitment to pay on Affeld's account sums to the extent of $7,500 upon proper demand. This figure was set up as a closing net worth asset without a corresponding liability. With respect to the $15,000 check Gromer testified that he purchased it for defendant and delivered it to him. Defendant insists that there is no evidence that the check was purchased with defendant's funds. We have examined the record and believe there was sufficient evidence to submit to the jury upon each of these matters. There was substantial evidence which, if believed, supported the requisite finding that defendant willfully understated his income by substantial amounts in both 1947 and 1948, and that black-market receipts received by him in the sale of automobiles was the likely source of his enhanced net worth.

Defendant insists further that the evidence obtained from the partnership books of Highland Motor Sales should have been excluded from evidence as illegally seized in violation of the Fourth Amendment. When the investigation began, Special Agent Weber and Revenue Agent Auld presented themselves at the office of Highland where they met defendant and asked that they be permitted to examine the partnership books. Defendant does not deny that he consented to their examination of the books, but argues that the evidence obtained should have been suppressed because Weber did not reveal that he was a Special Agent or disclose the purpose of the investigation. In this respect, Weber testified that when he met defendant at Highland, he identified himself as a Special Agent, displayed his credentials and asked to examine the books of the partnership; that defendant consented to the examination and directed his bookkeeper to supply any books and records which the agents wanted, and, that, thereafter, he sought and received the consent of defendant's co-partner that he might examine the books.

This argument is not essentially different from that advanced in Turner v. United States, 4 Cir., 222 F.2d 926, certiorari denied 350 U.S. 831, 76 S.Ct. 65, wherein defendants contended that evidence obtained from their books and records should have been suppressed, despite their consent to an examination of the books, for the reason that the investigating agents had not warned them that the evidence might be used in a criminal prosecution. The court there aptly stated, 222 F.2d at page 931: "The agents made no investigation to which defendants did not consent. The bookkeeper was ordered by the defendants to show the books and records of the business to the agent; * * *. The evidence is silent as to whether Agent Forbes began the investigation as a routine examination to ascertain the civil liability of the defendants or intended from the beginning to search for evidence of crime. But even if the latter assumption be made, there was no violation of the taxpayer's constitutional rights. The relevant inquiry is always whether the taxpayer freely gives his

consent, and as to that there is no dispute in this instance." This principle is cited with approval in Zacher v. United States, 8 Cir., 227 F.2d 219, certiorari denied 350 U.S. 993, 76 S.Ct. 542, and Eggleton v. United States, 6 Cir., 227 F. 2d 493, both evasion cases.

 We note briefly defendant's charge that the trial court erred in denying, without a hearing, his motion to suppress this evidence, which was made prior to trial and supported by defendant's affidavit. We think, however, the duty of a trial court to afford a hearing upon such a motion is limited by the prayer of the motion. In this respect, defendant, in his affidavit, did not deny, but rather, at least tacitly, admitted that he consented to examination of the books, but says he did not know of Weber's official title of Special Agent. The only hearing requested was the production of manuals prescribing the duties of special agents. There was no showing to warrant the granting of a hearing, inasmuch as there was no offer to prove that the evidence was submitted to the agents other than with defendant's consent. Cf. Smith v. United States, 348 U.S. 147, 151, 75 S.Ct. 194, 99 L.Ed. 192.

The case is unlike United States v. Wolrich, D.C., 129 F.Supp. 528, in which there was evidence that the treasury agents secured defendant's consent upon the assurance that the investigation was merely routine, when in fact, they were seeking evidence of fraud for a criminal prosecution. There is no suggestion of deception such as the court condemned in Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. There is no suggestion of lack of consent as appeared in Fitter v. United States, 2 Cir., 258 F. 567, and United States v. Brasley, D.C., 268 F. 59. The case of In re Subpoena Duces Tecum, D.C., 81 F.Supp. 418, involved compulsory acquisition of partnership records which were used in evidence against one of the partners. Here, both partners consented to the examination. Upon this record, we must conclude the evidence obtained from Highland's books was properly admitted.

 Defendant's remaining argument relates to the alleged defense of embezzlement. He contends that Gromer, his co-partner, filed a suit in 1951 for dissolution of the Highland partnership charging that defendant had embezzled partnership funds arising out of overceiling sales of automobiles. He asserts that the court erred in refusing to admit in evidence the stipulation of the parties settling that suit and in refusing to give defendant's tendered instructions relative to the defense of embezzlement. Argument on this phase of the appeal rests on the decision in Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, that moneys obtained by embezzlement do not constitute income to the embezzler. We think that decision is inapplicable to the case at bar and that the rulings of the court below were correct both as to the admission of evidence and as to instructions.

 Defendant sought to introduce the stipulation in the course of the cross-examination of plaintiff's witness Gromer, and to cross-examine the witness with respect to the 1951 lawsuit. The court ruled that this evidence was beyond the scope of proper cross-examination. Gromer was not called as a defense witness, and no attempt was made to introduce evidence as to a defense of embezzlement in defendant's case in chief. This, we believe, brings this question within our holding in United States v. Bender, 7 Cir., 218 F.2d 869, certiorari denied 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253, that the control over the orderly presentation of evidence resides in the sound discretion of the trial judge.

 In any event, the defense of embezzlement, under the Wilcox rule, has no application to the case at bar, since under Illinois law defendant cannot be guilty of the crime of embezzlement because of his wrongful conversion of partnership funds to his own use. I.R. S., c. 38, § 208, S.H.A. The postulate, supported by the Illinois decisions interpreting this statute, is that one having a property interest in funds in his pos-

session is not guilty of embezzlement if he wrongfully appropriates the whole fund to his own use. People v. Ehle, 273 Ill. 424, 112 N.E. 970; People v. O'Farrell, 247 Ill. 44, 93 N.E. 136; McElroy v. People, 202 Ill. 473, 66 N.E. 1058. A necessary element of the crime of embezzlement is the existence of an absolute property right in someone other than the alleged embezzler. McElroy v. People, supra.

Thus, in McElroy, defendant, a commission salesman, was convicted upon an indictment charging her with the embezzlement of the proceeds of certain sales. Inasmuch as it appeared from the evidence that defendant was entitled to deduct her commissions from the proceeds of such sales before paying over the balance to the prosecuting witness, the court reversed the conviction saying, 202 Ill. at pages 475–476, 66 N. E. at page 1059: "By this statute, in order to constitute the crime of embezzlement, the fraudulent conversion must be of the property of another. If the plaintiff had a right to deduct her commissions from the gross amount collected, then to that extent the money belonged to her, that is, she and the company owned the gross sum jointly. The law is that, where a defendant has an interest in the property or money alleged to have been fraudulently converted to his or her own use, there can be no conviction of the crime of embezzlement."

In Ehle, the conviction of embezzlement rested upon proof that defendant, as attorney for Burns, had settled a claim possessed by the latter, had deposited the check therefor in his own bank account and had checked the sum out for his own personal use. The court stated the applicable rule as follows, 273 Ill. at page 432, 112 N.E. at page 973: " * * * an agent would not be guilty of embezzlement if such agent had an interest in or part ownership of the funds involved, or until an accounting had been had and a demand and refusal to pay the amount due from such agent to his principal." The conviction was reversed, the court saying, 273 Ill. at page 433, 112 N.

E. at page 974: "If he took the suit independently for himself he was clearly entitled to fees, and he was not liable to indictment for embezzlement of this money, or to disbarment, until after a demand had been made upon him for the amount and a tender made of his reasonable fees and expenses. But no demand was ever made."

People v. O'Farrell, 247 Ill. 44, 93 N. E. 136, furnishes a good illustration of the application of this principle. O'Farrell was agent for one Vickerage to collect the rents from a hotel and also to negotiate its sale. The indictment charged that O'Farrell had embezzled both the sums collected as rents and those received from one Colgrove, in effecting the sale of the real property. It appeared that O'Farrell's agency, in each instance, grew out of separate contracts. The first provided that he was to deduct his commissions from funds collected as rent and to remit the net fund to Vickerage. The agency contract for the sale of the hotel provided that O'Farrell was to receive a commission for the sale of the property, but made no provision for his retention of his commission out of the funds received for the sale. The court held there was no embezzlement of the rent funds since O'Farrell had an interest therein, but affirmed the conviction because of his conversion of the sale proceeds in which he had no interest.

 Before embezzlement can arise, the funds in the hands of a fiduciary must be held under an absolute obligation to remit them to another, but taking of the whole of a fund cannot constitute embezzlement, if the fiduciary has an interest in it and a duty only to account to another for his distributive share thereof. This is a fair summary of the law of Illinois as established by the cases interpreting an act in all relevant respects identical to § 208. See also People v. Becker, 414 Ill. 291, 111 N.E.2d 491.

Defendant had an undistributed one-half interest in the partnership funds in question. His duty to Gromer was that of accounting for the latter's distributive

share, and defendant could not be guilty of embezzlement, at least until an accounting had been sought by Gromer and refused. No accounting was sought until 1951.

Even if this were an embezzlement of Gromer's distributive share of such black-market partnership income, the Government took the precautionary measure of allowing one-half of this partnership income as a deduction from net worth. We do not understand defendant's contention to be that he embezzled his own distributive share. Unless such an absurd result were contended, embezzlement, in any event, is removed from the case.

■■■ A vague assertion is made that someone connected with Highland may have embezzled the black-market funds belonging to both partners. The difficulty with this argument is that the record is wholly devoid of any such evidence. Insofar as the instructions rejected by the trial court may have been grounded upon such a contention, they were properly refused. It was incumbent upon defendant to assert and prove such embezzlement if he wanted to rely upon such a defense. He is not entitled to instructions resting upon mere speculative assertions manufactured wholly from thin air.

■■■ As to Count I the judgment is reversed. As to Counts II and III it is affirmed. Inasmuch as identical prison sentences were imposed upon each count, and inasmuch as all sentences, expressly, are to be served concurrently, our reversal of the judgment of conviction upon a single count does not necessitate a new trial.

## On Petition for Rehearing

Upon defendant's conviction on three counts of an indictment charging attempts to evade the payment of income taxes for the taxable years 1946, 1947 and 1948 by filing, or causing to be filed, false and fraudulent income tax returns in violation of 26 U.S.C. § 145(b), (I.R.C. 1939), he was sentenced, on each count, to serve two years in prison, the sentences to run concurrently.

On appeal, we reversed the conviction as to Count I and affirmed as to Counts II and III. Defendant's petition for a rehearing is based, *inter alia*, upon arguments addressed to the sufficiency of the evidence to prove his guilt upon the net worth theory of proof. We think nothing is added thereby to the points raised and argued on appeal. We adhere to our judgment affirming the conviction as to the two counts.

A rather troublesome question raised by the petition is one upon which defendant did not rely either in the trial court or before us on appeal, namely, that the sentence is invalid. As we have previously stated, the indictment charged three separate attempts to evade income taxes by filing false and fraudulent returns, a charge which has been repeatedly held to allege the felony defined in Section 145(b).[1] See e. g. United States v. Beacon Brass Co., 344 U.S. 43, 73 S. Ct. 77, 97 L.Ed. 61; United States v. Raub, 7 Cir., 177 F.2d 312; United States v. Rosenblum, 7 Cir., 176 F.2d 321, certiorari denied 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548. Defendant now contends, for the first time, that the charge contains the elements of the misdemeanor defined in 26 U.S.C. § 3616(a), (I.R.C.1939)[2], that those elements and

1. "(b) * * *. Any person * * * who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

2. "Whenever any person—
 "(a) False returns. Delivers or discloses to the collector * * * any false or fraudulent list, return, * * *, with intent to defeat or evade the * * * assessment intended to be made;
 * * * * *
 "he shall be fined not exceeding $1,000, or be imprisoned not exceeding one year, or both, at the discretion of the court, with costs of prosecution."

those of the felony are in all respects identical and that, therefore, it was error for the trial court to impose a sentence greater than that prescribed for the misdemeanor by § 3616(a).

The government admits that both § 145(b) and § 3616(a) apply to income tax returns and cover identical ground. It contends, however, that the government has the authority to elect under which statute it will proceed, or, alternatively, that the subsequent enactment, § 145(b), repeals § 3616(a) by implication.

Before reaching the merits of defendant's petition, we must determine whether the question can properly be raised at this late date. We think that it cannot. We say this advisedly, and do not purport to determine whether, were the question an open one, we would construe the conceded overlapping of the two statutes as a question of plain error "affecting substantial rights" and therefore noticeable "although * * * not brought to the attention of the [trial] court." Fed.Rules Crim.Proc. 52(b), 18 U.S.C.A. We think that a determination that the question does not present such error is manifest in the recent pronouncements by the Supreme Court in Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, which, at least, imply that the validity of a sentence under § 145(b) must be challenged by an appropriate proceeding in the trial court.

The indictment in Berra was in all material respects identical to that before us. At the close of all the evidence Berra requested an instruction "that a verdict of guilty of the 'lesser crime' under § 3616(a) would be permissible." 351 U.S. at page 132, 76 S.Ct. at page 687. Although the Court's decision affirming Berra's sentence is restricted to the narrow question whether that requested instruction was properly refused, the Court concluding that the refusal did not constitute error, the intendments of the opinion are much broader. The Court assumed, *arguendo*, that both § 145(b) and § 3616(a) applied and "covered precisely the same ground." 351

U.S. at page 134, 76 S.Ct. at page 688. It held, however, that the implication of such overlapping was a question of law for the court which had not been raised in the trial court and that "no such questions are presented here." 351 U.S. at page 135, 76 S.Ct. at page 688.

Mr. Justice Black filed a dissenting opinion, in which Mr. Justice Douglas joined, stating that he would reverse the judgment, or at least remand the case to the district court "for resentencing under the misdemeanor statute, § 3616(a)." 351 U.S. at page 140, 76 S.Ct. at page 691. The dissent is based upon the postulate that the case presented an issue of plain error affecting substantial rights.

We can only conclude that the majority opinion in Berra inherently impels a determination that the question before us does not reflect plain error. Rule 52(b) was designed to reach errors of such a substantial nature that they would, if not corrected, result in a manifest miscarriage of justice. United Brotherhood of Carpenters v. United States, 330 U.S. 395, 67 S.Ct. 775, 91 L. Ed. 973; United States v. Vasen, 7 Cir., 222 F.2d 3, certiorari denied 350 U.S. 834. Inasmuch as errors within the comprehension of the provisions of this rule are those of such a nature that they must be corrected to prevent a manifest injustice, it is incumbent upon a reviewing court to notice such error *sua sponte* although the issue presented is not raised on appeal. Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. Dressler, 7 Cir., 112 F.2d 972; Lash v. United States, 1 Cir., 221 F.2d 237, certiorari denied 350 U.S. 826, 76 S.Ct. 55; Austin v. United States, 5 Cir., 208 F.2d 420; Simmons v. United States, 92 U.S.App.D.C. 122, 206 F.2d 427; United States v. Kemble, 3 Cir., 197 F.2d 316. Cf. United States v. Jonikas, 7 Cir., 187 F.2d 240, certiorari denied 344 U.S. 877, 73 S.Ct. 171, 97 L. Ed. 679.

In the face of this pronounced duty upon federal appellate courts, see Screws v. United States, supra, the Court

in Berra took the position that the issue of the implication of the overlapping of §§ 145(b) and 3616(a) was not preserved because Berra had presented no proper challenge to the sentence to the trial court. As the dissenting Justices aptly observed, 351 U.S. at page 137, 76 S.Ct. at page 689, the instruction which Berra requested advised the lower court of "petitioner's contention that the offense charged was not a felony but a misdemeanor." If the question was not preserved for review under the circumstances of that case, it certainly cannot be raised on this appeal in which there was no intimation of error below in the imposition of sentence or on appeal until the petition for rehearing was filed.

The petition is denied.