## TUCKER v. UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 970. Submitted December 4, 1893. — Decided January 3, 1894.

An affidavit, under section 878 of the Revised Statutes, by a person indicted, setting forth that certain testimony is material to his defence and that he is without means to pay the witnesses, and praying that they may be summoned and paid by the United States, is not a "pleading of a party," nor "discovery or evidence obtained from a party or witness by means of a judicial proceeding," which cannot, by section 860, be given in evidence against him in a criminal proceeding.

On a trial for murder of a woman by shooting, the jury were instructed that if the defendant, at the time of the killing, although not insane, was in such a condition, by reason of drunkenness, as to be incapable of forming a specific intent to kill, or to do the act that he did do, the grade of his crime would be reduced to manslaughter. *Held*, that he had no ground of exception to a refusal to instruct that if at the time of the killing he was so drunk as to render the formation of any specific intent to take her life impossible on his part, and before being drunk he entertained no malice towards her and no intention to take her life, he could not be convicted of murder.

Rulings objected to at the trial, but not stated in the bill of exceptions to have been excepted to, are not subject to review on error.

THIS was an indictment, found at November term, 1892, of the Circuit Court of the United States for the Western District of Arkansas, against Marshal Tucker, for the murder of Lula May, a white woman, by shooting her with a pistol, at the Choctaw Nation in the Indian Country in that district on October 15, 1892.

The defendant pleaded not guilty; and by agreement of the parties the case was ordered to be continued to the next term and set down for trial on February 23, 1893.

On February 21, 1893, the defendant, by his attorney, filed an application, dated February 20, and signed and sworn to by him, pursuant to section 878 of the Revised Statutes, setting forth that certain persons named were material witnesses for

his defence; that "by the three first-named witnesses, who reside at South McAlester, he can show that he was so intoxicated at the time of the alleged homicide that he had no knowledge of what he was doing, and was incapable of forming any design;" that "these statements he believes to be true, and he is not possessed of sufficient means, and is actually unable to procure the attendance of said witnesses;" and therefore praying that they might be summoned at the expense of the United States. Thereupon the court ordered that the legal expense of procuring the testimony of those witnesses be paid by the United States, and that a subpœna be issued for them returnable February 23.

At the trial, in March, 1893, the government introduced evidence tending to show that the woman killed was an inmate of a house of ill fame, and that the defendant, on the evening of October 15, 1892, went to the house and asked for admittance, and, the door not being opened, fired a pistol through the door and killed the woman.

The defendant called none of the witnesses named in his application; but, having offered himself as a witness in his own behalf, testified as to what took place at the time of the killing, and, among other things, that he did not fire any shot at all; that after he had asked to be admitted to the house, a shot was fired by some other person, whether from the inside or the outside he did not know, and afterwards his pistol was put into his hand by another man whom he named.

On cross-examination, the defendant testified that he signed the application aforesaid; that he had not since changed his mind about whether he knew what was going on there or not; that the witnesses named were present, and saw him intoxicated at the time of the killing; that the defence then intended was not that he was crazy; and further testified that on the night of the killing he was not so drunk as not to know what he was doing, and everything that was going on.

The district attorney, in rebuttal, offered in evidence the application for witnesses. The counsel for the defendant objected that it was incompetent, under section 860 of the

Revised Statutes. But the court admitted the paper in evidence, and the defendant excepted to its admission.

The defendant contended that he did not kill the woman; that, if he did, his crime was manslaughter only; and that, at the time of the killing, he was intoxicated.

The substance of the instructions of the court upon the subject of intoxication sufficiently appears by the following extracts: "If the statement of the defendant himself, that he did know what he was doing, is true, and he intentionally drew the pistol, presented it, and fired it so as to take the life of this woman, that would not be a state of case where there would be that absence of that premeditation which goes to make malice aforethought. If he was in a condition of mind, at the time that he was so acting, that his mind was so disturbed by drinking, by a drunken condition, that he was incapacitated so that he was incapable of forming any intent, or intent to do a wrongful act that might result in death, that may be taken into account for the purpose of showing a state of case where the crime would be of less grade than that of murder." "When a man's mind is in a condition where he can form an intent to do a wrongful act that may result in murder, and he does deliberately form that intent, as evidenced by the drawing and presenting and firing his pistol, then intoxication does not mitigate his offence. If he is carried beyond that, although he may not be absolutely insane, so that his will power is gone, so that he has no control over it, so that he cannot restrain it, while he may not be insane, then there is an absence from the case of what is denominated by law as malice aforethought, and his offence would be manslaughter." "You are not to excuse him to the extent of mitigating his crime because he was drunk, unless he was in that condition where he was incapable of forming an intent, where he was incapable of coming to a conclusion — and it does not mean alone incapable of forming a specific intent to kill, but it means incapable of forming a specific intent to do an act that may kill, that goes so far as to reduce the grade of the crime. If he could not form a specific intent to do the act he did do, then that would reduce the grade of the crime, because of drunkenness."

The defendant requested the court to instruct the jury that if they believed from the evidence " that the defendant was at the time of the killing of Lula May drunk, and that before becoming drunk he entertained no malice toward her and had no intention to take her life, and that his intoxication was so deep as to render the formation of any specific intent to take life impossible on his part, he could not be convicted of murder." This request was refused, " because the law had been correctly given on the subject of drunkenness;" and to the refusal of the court to so instruct the jury the defendant at the time excepted.

The bill of exceptions further stated that the defendant objected to the instructions given by the court to the jury in several particulars, but did not show that an exception was taken to any of those instructions.

The defendant was convicted of murder and sentenced to death; and sued out this writ of error.

*Mr. A. H. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Conrad* for defendants in error.

Mr. Justice GRAY, after stating the case, delivered the opinion of the court.

The only exception argued to any ruling upon evidence was to the admission, in contradiction of the defendant's own testimony at the trial, of the application made by him on oath, a few days before, for the summoning and payment by the United States of witnesses in his behalf.

That application was made under section 878 of the Revised Statutes, which is as follows: " Whenever any person indicted in a court of the United States makes affidavit, setting forth that there are witnesses whose evidence is material to his defence; that he cannot safely go to trial without them; what he expects to prove by each of them; that they are within the district in which the court is held, or within one hundred

miles of the place of trial; and that he is not possessed of sufficient means, and is actually unable to pay the fees of witnesses, the court in term, or any judge thereof in vacation, may order that such witnesses be subpœnaed if found within the limits aforesaid. In such case the costs incurred by the process and the fees of the witnesses shall be paid in the same manner that similar costs and fees are paid in case of witnesses subpœnaed in behalf of the United States."

The objection to the admission of this affidavit or application was founded on section 860 of the Revised Statutes, which is as follows: "No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture: Provided, that this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering or testifying as aforesaid."

The paper in question was neither a "pleading of a party," nor "discovery or evidence obtained from a party or witness by means of a judicial proceeding." "Pleadings of parties" are the allegations made by the parties to a civil or criminal case, for the purpose of definitely presenting the issue to be tried and determined between them. "Discovery or evidence obtained from a party or witness by means of a judicial proceeding" includes only facts or papers which the party or witness is compelled by subpœna, interrogatory or other judicial process to disclose, whether he will or no: and is inapplicable to testimony voluntarily given, or to documents voluntarily produced. The clause as to discovery or evidence is conceived in the same spirit as the Fifth Amendment of the Constitution, declaring that no person shall be compelled in any criminal case to be a witness against himself; and as the act of March 16, 1878, c. 37, (20 Stat. 30,) enacting that a defendant in any criminal case may be a witness at his own request, but not otherwise, and that his failure to make

such request shall not create any presumption against him. *Boyd* v. *United States*, 116 U. S. 616; *Wilson* v. *United States*, 149 U. S. 60; *Lees* v. *United States*, 150 U. S. 476.

The application for witnesses, or "affidavit," as it is called in section 878, is clearly not a pleading of the defendant for the purpose of defining the issue to be tried in the case. Nor is it obtained from him by any judicial process, which he is obliged to obey. But it is made of his own motion; and it states such facts, and such only, as he, being in no way interrogated or cross-examined, may choose to state. His oath to the nature and materiality of the desired testimony, and to his own want of means, is required merely to establish the good faith of his demand that particular witnesses shall be summoned and paid by the government.

The affidavit being neither a "pleading" of the defendant, nor "discovery or evidence obtained" from him, within the meaning of the statute, the statements therein, as in any other paper voluntarily signed by him, whether upon oath or not, were competent evidence to contradict his testimony upon the stand.

In the matter of instructions to the jury, the only exception reserved at the trial was to the refusal to give the instruction requested as to the effect of the defendant's drunkenness upon his guilt.

In *Hopt* v. *People*, 104 U. S. 631, this court recognized the general rule that, at common law, voluntary intoxication affords no excuse, justification or extenuation of a crime committed under its influence; and went no further in favor of admitting evidence of intoxication than to hold that a defendant, indicted under a territorial statute establishing degrees of murder and requiring deliberate premeditation to constitute murder in the first degree, might show that at the time of the killing he was in such a condition, by reason of drunkenness, as to be incapable of deliberate premeditation.

No act of Congress has established degrees of the crime of murder. By the common law, neither deliberate premeditation, nor express malice or intent to kill, is required to make an unlawful homicide murder, but malice may be im-

plied from the use of a deadly weapon or other significant facts; and any unlawful killing without malice, express or implied, is manslaughter. It has often been held, and was formerly considered to be settled law, that a wanton killing without provocation could not, by reason of being done by a man voluntarily intoxicated to any degree not amounting to insanity, be excused, or reduced from murder to manslaughter. *United States* v. *Cornell*, 2 Mason, 91, 111; *United States* v. *Drew*, 5 Mason, 28; *United States* v. *McGlue*, 1 Curtis C. C. 1, 13; *People* v. *Rogers*, 18 N. Y. 9; *King* v. *People*, 31 N. Y. 330; *Commonwealth* v. *Hawkins*, 3 Gray, 463; *State* v. *Johnson*, 41 Conn. 584; *State* v. *John*, 8 Iredell, 330; 1 Bishop's New Criminal Law, §§ 400, 401. But that view has not been universally accepted in recent times, and we are not required in the present case to express any opinion in regard to it.

The instruction requested was that if the defendant at the time of killing the woman was so drunk as to render the formation of any specific intent to take her life impossible on his part, and before becoming drunk he entertained no malice towards her and no intention to take her life, he could not be convicted of murder. This instruction was refused, because it had been covered by the instructions given. In those instructions the jury were distinctly told that if the defendant at the time of the killing, although not insane, was in such a condition of mind, by reason of drunkenness, as to be incapable of forming a specific intent to kill, or to do the act that he did do, the grade of his crime would be reduced to manslaughter. The instructions given were quite as favorable to the defendant as that which he requested; and the fact that the court instructed the jury in its own words, and declined to adopt the language of the counsel to the same effect, affords no ground of exception. *Anthony* v. *Louisville & Nashville Railroad*, 132 U. S. 172.

The other instructions to which the defendant objected are not subject to review, because the bill of exceptions does not show that he excepted to them. *United States* v. *Breitling*, 20 How. 252.　　　　　　　　　　*Judgment affirmed.*