**AUSTIN et al. v. UNITED STATES.**
No. 14475.

United States Court of Appeals
Fifth Circuit.
Nov. 24, 1953.

---

Jack T. Niland, Hubert T. Faulk, El Paso, Tex., for appellants.

Charles F. Herring, U. S. Atty., Austin, Tex., Holvey Williams, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The indictment charged that, "on lands acquired for the use of the United States and under the exclusive jurisdiction of the United States, Marvin Lee Austin and Raymond Lesley Button with premeditation shot and murdered Jesus Alvarez Gonzalez".[1] Each defendant entered a plea of not guilty. The jury returned a verdict finding each defendant "Guilty, as charged in the indictment, and we (do not) qualify our verdict 'without capital punishment' ". The defendants, and each of them, were thereupon sentenced by the Court to suffer death. This appeal followed.

It was established without any dispute, and admitted by both defendants, that the defendant Austin, while accompanied by the defendant Button, killed a man by shooting him with a rifle on land that had been ceded to the United States and within the jurisdiction of the Court. The principal insistence of the defendants was that the Government had not proved beyond a reasonable doubt that the person killed was Jesus Alvarez Gonzalez. The sufficiency of the evidence upon that issue to establish the *corpus delicti* is urged upon appeal, and counsel for the respective appellants further insist that the District Court erred in admitting in evidence, over the objection of the defendants, certain of the Government's exhibits, and in its charge to the jury. In deciding whether any reversible error was committed upon the trial we apply the rule that in a criminal case this Court may notice a plain and material error within its power to correct, even though that error is not specifically challenged, and that it certainly should do so where life is at stake. Fisher v. United States, 328 U.S. 463, 467, 468, 66 S.Ct. 1318, 90 L.Ed. 1382; Weakley v. United States, 91 U.S.App.D.C. 8, 198 F.2d 940, 944; Jones v. United States, 9 Cir., 175

---

1. Title 18 U.S.C. § 1111. Murder

"(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

"Any other murder is murder in the second degree.

"(b) Within the special maritime and territorial jurisdiction of the United States,

"Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto 'without capital punishment', in which event he shall be sentenced to imprisonment for life;

"Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life."

F.2d 544, 549; Evans v. United States, 10 Cir., 122 F.2d 461, 467; Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297, 299; Kinard v. United States, 68 App.D.C. 250, 96 F.2d 522, 526; Suhay v. United States, 10 Cir., 95 F.2d 890, 893; Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.

■ After the shooting, the taxicab in which it occurred and the dead body were burned, so that the body could not be identified by simple inspection. The cab was identified as the one of which Jesus Alvarez Gonzalez was the driver. The taxicab dispatcher had talked to Gonzalez over radio telephone, recognizing his voice as late as 10:40 P. M. Gonzalez has not been seen or heard from by his family or business associates since that time. A dental chart claimed to be of Gonzalez was compared by an expert with the remains of the charred skull and the expert testified that there was substantial agreement between the chart and the remains he was examining, though he further testified that the chart would compare favorably with many hundreds or thousands of other skulls. Gonzalez was a Mexican, and Button testified that the man killed was of Mexican descent. He further admitted picking out a photograph as being a picture of the man that was killed, but testified at the trial that he was then unable to identify any picture as the one he had selected. The evidence was sufficient, we hold, to justify submission to the jury of the question of identity of the person killed with Jesus Alvarez Gonzalez.

■ The District Court erred, however, in admitting in evidence, over the objection of the defendants, a certified copy of the certificate of death of Jesus Alvarez Gonzalez on file with the Texas Department of Health, Bureau of Vital Statistics, showing that his death was produced by a gunshot wound to his head. The information furnished by that certificate as to the identity of the deceased body with Gonzalez was necessarily hearsay, and the certificate should not have been admitted.

In the course of his oral charge to the jury the District Judge charged as follows:

"Each defendant has admitted that he and the other defendant agreed and conspired to rob somebody, and that while in the furtherance of this agreement and conspiracy the defendant Austin shot and killed the taxi driver, Gonzalez. You are, therefore, instructed that there is no dispute about this fact and that it is clearly established by all of the evidence, even the admission of each of the defendants."

■ While there was no objection on behalf of either of the defendants, we think that this portion of the charge was plainly erroneous. Neither defendant had admitted in his testimony that the man shot and killed was Gonzalez, and the Court erred in so instructing the jury. O'Shaughnessy v. United States, 5 Cir., 17 F.2d 225.

Neither of the defendants claimed that he was so intoxicated that he did not know what he was doing. There was no contention that drunkenness furnished a defense to the crime or operated to reduce the grade of the offense.[2] There was evidence, however, that from about five o'clock that afternoon, up until he got into the taxicab, Austin had drunk approximately twenty twelve ounce glasses of beer "or better", part of a "fifth" of gin, and part of a quart of wine, and that Button had drunk the remainder of the quart of wine in addition

2. Compare Hopt v. People, 104 U.S. 631, 26 L.Ed. 873; Tucker v. United States, 151 U.S. 164, 14 S.Ct. 299, 38 L.Ed. 112; Fisher v. United States, 328 U.S. 463, 475, 489, 66 S.Ct. 1318, 90 L.Ed. 1382; Myres v. United States, 5 Cir., 256 F. 779, 781; Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297; McAffee v. United States, 72 App.D.C. 60, 111 F. 2d 199, 205; McRaye v. United States, 9 Cir., 163 F.2d 868; Goodall v. United States, 86 U.S.App.D.C. 148, 180 F.2d 397, 401, 17 A.L.R.2d 1070; Annotations, 12 A.L.R. 861, 879, 883, 79 A.L.R. 897, 903, 904; 40 C.J.S., Homicide, § 5b.

to several other drinks. Most of the drinking had occurred before any plans to commit a crime were discussed. In the course of his oral charge to the jury, the District Judge instructed them as follows:

"Now, the law provides that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. This means that drunkenness, if the evidence shows that the defendants were in such a condition when allegedly they committed the crime charged, is not of itself a defense in this case. It may throw light on the occurrence and aid you in determining what took place, but when a person in a state of intoxication, voluntarily produced by himself, commits a crime such as that charged against the defendants in this case, the law does not permit him to use his own vice as a shelter against the normal legal consequences of his conduct."

In the matter of the jury's discretion either to qualify or not to qualify the verdict as "without capital punishment", the judge instructed the jury as follows:

"If, however, you do agree with me, and believe beyond a reasonable doubt that the defendants, both or either of them, are guilty as charged in the indictment then it will be your duty to qualify or not qualify your verdict with the words 'without capital punishment', being the exact words used by the United States Code, which is the law of our country.

"If, under the instructions heretofore given you, you find the defendants, or either of them, guilty of murder in the first degree, as charg-

ed in the indictment, it will be your duty, gentlemen—and I call your special attention to this—to decide whether to qualify your verdict by adding the words 'without capital punishment.' Now, Section 1111 of the United States Code, which I have read to you, is the law by which you and I must be guided in this matter.

"Your verdict in every instance must be unanimous and in this last instance it must be unanimous if you conclude to add the words 'without capital punishment' and it must also be unanimous if you conclude not to add said words. In other words, you must agree unanimously whether to add this phrase or you must agree unanimously not to add it, and your verdict as to guilt or innocence as to the murder issue will be no verdict if you do not agree unanimously to add or not to add the phrase 'without capital punishment.' "

The District Judge did not explain to the jury the scope of their discretion as fully as did the trial court in Andres v. United States, 333 U.S. 740, 743, 68 S. Ct. 880, 882, 92 L.Ed. 1055,[3] a case in which the Supreme Court held that the trial judge's instructions on this issue satisfied the requirements of the statute.

■■ The failure of the court to explain fully to the jury the extent of their discretion in deciding whether the defendants, or either of them, should or should not be capitally punished, and the court's charge on the effect of voluntary intoxication heretofore quoted, when coupled together, would probably lead the jurors to believe that evidence of intoxication may not be given any consideration in determining whether the punishment should or should not be mitigated.[4]

---

3. The instruction in that case concluding as follows:
 " 'In this connection, I further instruct you that you are authorized to add to your verdict the words "without capital punishment," and this you may do no matter what the evidence may be and without regard to the existence of mitigating circumstances.' "

4. That is more probable in view of the terms of Section 1111 of Title 18 of the United States Code (footnote 1 supra) which the Court had read to the jury and by which it instructed the jurors they must be guided, the pertinent part of that statute reading:
 "Whoever is guilty of murder in the

The law is to the contrary, that such evidence may be so considered. 41 C.J.S., Homicide, § 435, page 320; See Kemp v. Government of Canal Zone, 5 Cir., 167 F.2d 938, 942.

 That the District Court could not properly circumscribe the exercise of the jury's discretion is made plain from the language of the Supreme Court in Winston v. United States, 172 U.S. 303, 312, 313, 19 S.Ct. 212, 215, 43 L.Ed. 456.

"The act of Congress confers this right upon the jury, in broad and unlimited terms, by enacting that, 'in all cases in which the accused is found guilty of the crime of murder,' 'the jury may qualify their verdict by adding thereto "without capital punishment," ' and that, 'whenever the jury shall return a verdict qualified as aforesaid' the sentence shall be to imprisonment at hard labor for life.

"The right to qualify a verdict of guilty by adding the words 'without capital punishment' is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or *circumscribing* the exercise of this right, but commits the whole matter of its exercise to the judgment and the consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court or the jury is of opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment. How far considerations of age, sex, ignorance, illness, or *intoxication,* of human passion or weakness, of sympathy or clemency, or the irrevocableness of an executed

sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of congress to the sound discretion of the jury, and of the jury alone." (Emphasis supplied.)

A decision of this appeal does not require us to discuss any other rulings. Accordingly the judgment is reversed and the cause remanded for another trial.

Reversed and remanded.

first degree, shall suffer death *unless* the jury qualifies its verdict by adding thereto 'without capital punishment', in which event he shall be sentenced to imprisonment for life". (Emphasis supplied.)