**MURPHY AUTO PARTS COMPANY, Inc., Appellant,**

v.

**Thomas Charles BALL, through his next friend, Rita H. Ball, Appellee.**

**MURPHY AUTO PARTS COMPANY, Inc., Appellant,**

v.

**George J. BALL, Sr., and Rita H. Ball, Appellees.**

**Nos. 13599, 13600.**

United States Court of Appeals District of Columbia Circuit.

Argued June 11, 1957.

Decided Oct. 25, 1957.

Petition for Rehearing In Banc Denied Nov. 22, 1957.

Mr. R. Sidney Johnson, Washington, D. C., with whom Mr. Guy B. Hardy, Washington, D. C., was on the brief, for appellant.

Mr. Albert J. Ahern, Jr., Washington, D. C., with whom Mr. James J. Laughlin, Washington, D. C., was on the brief, for appellees.

Before BAZELON, FAHY and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The issue presented by this appeal is whether an alleged out of court utterance of an employee, driving his own car after working hours, stating that he was on an errand for his employer, is admissible to show that he was in fact engaged in his employer's business at the time of a collision with a pedestrian, where the statement is a spontaneous declaration or excited utterance.

The facts are essential to a complete understanding of the precise legal issues presented. Appellee Thomas Ball, a minor, was injured in 1952 when struck by a passenger car owned and driven by James Murphy. James Murphy was employed as a clerk by his stepfather's business concern, appellant here. The injury occurred at 6:30 P.M., one and one-half hour after his regular work day which terminated at 5:00 P.M. Appellee Rita Ball, the mother of the injured child, testified that immediately after the injury and at the scene of the accident, James Murphy "told me that he was sorry, that he hoped my son wasn't seriously hurt, he had to call on a customer and was in a bit of a hurry to get home." James Murphy denied making this or any statement to Mrs. Ball.

It is admitted that James Murphy was employed as a clerk by Murphy Auto Parts Co. on the day of the injury to the minor appellee. It was shown that he received a regular allowance for auto expense [1] but both Murphy and his employer insisted all Murphy's duties were inside clerical work and denied he was authorized to use his personal car for company business. The record shows that at a later date, some months after the accident, James Murphy did make calls on customers using his own car. Thus it is clear that there was a relationship of master and servant, leaving in dispute whether James Murphy was engaged in his employer's business at the precise time appellee's injuries were inflicted. The utterances attributed to James Murphy immediately after the collision tend to show he was at that time on an errand for his employer, and if properly received furnish adequate support for the findings of the jury.

Appellant relies first on the general proposition that the declaration of an agent concerning his authority is inadmissible against his employer [2] and

---

1. The books of appellant corporation show James Murphy received $10 a week car allowance in addition to his salary. Officers of appellant corporation testified this was simply a means of giving James added compensation and to pay him for his cost of transportation to and from work.

2. See, e. g., Russell v. Washington Sav. Bank, 1904, 23 App.D.C. 398; Restatement, Agency § 285 (1933); 1949, 3 A.L.R.2d 598 and prior annotations there cited, covering comprehensive discussion of this subject.

correctly points out that absent the alleged utterance of James Murphy there was not sufficient evidence on which a jury could find that he was acting within the scope of his employment when the accident occurred. Second, appellant urges that under the so-called excited utterance rule such utterances are admissible only and narrowly to explain the exciting occurrence and for no other purpose.

The decided cases dealing with the admissibility of statements of an employee, concerning his authority, are in confusion as to the basis for receiving such evidence. The broadly stated proposition that the authority of an agent cannot be proved "out of the mouth of the agent" is true only if it is considered with its numerous exceptions, which taken together render the general proposition one of relatively little significance. The rationale of excluding such statements seems to rest on the assumed want of reliability; the exceptions to the "rule" tend to rest on finding reliability in the circumstances of the utterance. For example, when made in court under oath, subject to the tests of cross examination and penalties of perjury, those circumstances are regarded as making the statement sufficiently trustworthy to be received.[3] Or, where other independent evidence of authority is present, the assumed want of reliability of the statements is regarded as sufficiently cured by that corroboration.[4] A third category of circumstances regarded as curing the want of reliability or reasonably insuring reliability is the area embraced within the spontaneous declaration, or more aptly called, the excited utterance exception.[5] Here we are still dealing with hearsay but its want of reliability is regarded as satisfied by the circumstances in which the statement is made. The prompt, spontaneous character of the utterance under the impact and stress of the exciting event which "stills the reflective process" provides the circumstances, which, experience shows us, make for reliability.

There has been a general failure to recognize that the rationale of the excited utterance doctrine furnishes a separate and distinct basis for admissibility, not to be confused with the vicarious admissions rule. Under the vicarious admissions rule, a substantive rule of agency, an agent's out of court statements as to his authority (or any other relevant matter) may be received even though hearsay, if other evidence proves he was authorized to speak. There the element of reliability is not a problem since it is the *fact* of the utterance, not its truth which is in issue.[6]

Thus, if the words qualify as a vicarious utterance, *i. e.*, the authorized words of the principal uttered by the agent, it is not necessary that they also qualify as excited utterances. If they qualify as excited utterances there is no rational basis for demanding more, since the want of reliability has been cured by the circumstances, as has been pointed out.

Unfortunately few courts have recognized this and there has been a general tendency to blur the requirements of vicarious utterances and excited utterances.[7] Mecham dispels this confusion, stating:[8]

3. See Mecham, Agency § 291 (1914).

4. See id. § 1774.

5. Wigmore, Evidence § 1745 (1940).

6. See Restatement, Agency §§ 285, 286 (1933); Wigmore, Evidence § 1078 (1940).

7. Undoubtedly some of the confusion between vicarious utterances and excited utterances is due to the use of res gestae for either doctrine. See Wigmore, Evidence §§ 1768–9 (1940). Use of the term res gestae has been criticized because its meanings "are as numerous as the various cures for rheumatism, and about as useful." Coryell v. Clifford F. Reid Inc., 1931, 117 Cal.App. 534, 4 P.2d 295, 296 (dissent).

8. Mecham, Agency § 1793 (1914). For a case applying, if not recognizing this principle, see Chantry v. Pettit Motor Co., 1930, 156 S.C. 1, 152 S.E. 753, and full discussion in the dissent. Cf. Mancuso v. Hurwitz-Mintz Furn. Co., La. App.1939, 183 So. 461; Lowie v. Dixie Stores Co., 1934, 172 S.C. 468, 174 S.E. 394.

"Although they thus cannot be regarded as *authorized,* the declarations and admissions of an agent may often be put in evidence upon an entirely different ground, namely, that they constitute [a spontaneous utterance] * * *. The use here * * * does not necessarily depend upon the law of agency at all. It is a rule of evidence, and is just as applicable in a proper case to one who was not an agent at all as to one who was an agent * * *. The theory is that the spontaneous utterances of one who speaks under the excitement of the moment and before he has had time to deliberate— to concoct a self-favoring story—are likely to be true."

Professor Wigmore agrees:[9]

"That there are two distinct and unrelated principles involved must be apparent; and the sooner the Courts insist on keeping them apart, the better * * *."

We are satisfied, therefore, that when out of court statements qualify as excited utterances, the hearsay rule removes its bar to admissibility. The fact that the utterer is an agent is immaterial so far as admissibility as an excited utterance is concerned.[10]

We turn now to appellant's argument that the part of the alleged utterance of James Murphy tending to show that he was on an errand for his employer did not qualify as an excited utterance, because it did not illuminate the exciting event but rather went to the issue of his authority.[11]

A majority of decided cases and authorities appear to require the presence of three elements in order for an out of court statement to qualify as an excited utterance or spontaneous declaration. These are (a) an exciting event (b) an utterance prompted by the exciting event without time to reflect, *i. e.,* dominated by the nervous excitement of the event, and (c) the utterance must explain or illuminate the exciting event.[12] But a careful analysis of the entire subject demonstrates that the third element, mechanically and narrowly construed, is a spurious element,[13] and that reliability of the utterance is not inflexibly dependent upon the subject matter of the utterance.

The test for receiving the utterance, therefore, should be whether it meets the first two requirements of a spontaneous declaration or excited utterance referred to earlier. This lies essentially with the trial court, and not unlike the evaluation of credibility is one based in part, at least, on observation of the witness, the context of the statement and all surrounding circumstances. It should be kept in mind that as soon as the excited utterance goes beyond description of the exciting event and deals with past facts or with the future it may tend to take on a reflective quality and must be more carefully scrutinized with respect to the second element, that of true spontaneity. In other words, the very fact that the utterance is not descriptive of the exciting event is one of the factors which the trial court must take into account in the evaluation of whether the statement is truly a spontaneous, impulsive expression excited by the event.[14] Most

---

9. Wigmore, Evidence § 1078 (1940).

10. See Wigmore, Evidence § 1756a (1940); Restatement, Agency § 289, comment (d) (1933); Note, Theoretical Bases of Admitting Agent's Declarations, 37 Ky.L.J. 417 (1949).

11. See Dudley v. Preston Motor Co., 6 Cir., 1931, 51 F.2d 8; Deater v. Penn Mach. Co., 1933, 311 Pa. 291, 166 A. 846.

12. Wigmore, Evidence §§ 1750, 1754 (1940).

13. As Wigmore points out this third element has been erroneously carried over from the verbal act doctrine. Wigmore, Evidence §§ 1752, 1754 (1940).

14. "The purport of the statement and its relation to the exciting event should be merely matters to be considered in determining whether the declaration was probably spontaneous or was reflective." McCormick, Evidence § 272 n. 15 (1954).

often the excited utterance, as a practical matter, relates to the exciting cause, *i. e.,* description of an accident, an attack, etc., but if the utterance goes beyond a description of the occurrence and still meets the other tests of the excited utterance rule, we think it should be received if it is relevant.[15]

We hold that the alleged out of court statement of James Murphy, uttered at the time of the accident, to the effect that he was on an errand for his employer, and expressly found by the trial court to have been an excited utterance, was properly received in evidence as such.

Affirmed.

15. See *Metropolitan R. Co. v. Collins,* 1893, 1 App.D.C. 383, which suggests that the trial court should use its discretion more cautiously when the utterer is an agent, and may have a self-interest in claiming to be within the scope of his employment.