Bernard SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16913.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 25, 1962.

Decided Dec. 13, 1962.

868

J. Skelly Wright, Circuit Judge, dissented in part.

Messrs. Jo V. Morgan, Jr., and Gilbert Hahn, Jr., Washington, D. C. (both appointed by the District Court), with whom Mr. Mark B. Sandground, Washington, D. C., was on the brief, for appellant.

Mr. Paul A. Renne, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Joel D. Blackwell, and Nathan J. Paulson, Asst. U. S. Attys., at the time the brief was filed, were on the brief, for appellee. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellee.

Before WASHINGTON, BURGER and WRIGHT, Circuit Judges.

PER CURIAM.

Appellant was indicted for housebreaking, D.C.Code Ann. § 22–1801 (1961) and for rape, D.C.Code Ann. § 22–2801 (1961). He was tried before a jury and convicted on both counts and sentenced to concurrent terms of three to ten years in prison.

The housebreaking and rape took place on May 17, 1961, at approximately 5 a. m. and were promptly reported to the police. Shortly thereafter the complaining witness was taken to D.C. General Hospital where she was examined by a Dr. Larocca, who made a report of his findings. In preparing for trial, the government, pursuant to the requirements of 18 U.S.C. § 3432 (1958),[1] provided the defendant with a list of witnesses who were to be called to prove the government's case. The examining doctor was listed as a government witness but by the time the case came to trial he was no longer in the District of Columbia and was un-

1. "A person charged with [a] capital offense shall at least three entire days before commencement of trial be furnished with * * * a list * * * of the witnesses to be produced on the trial for proving the indictment * * *."

available. As part of the foundation for the medical report the prosecutor sought to qualify a representative of the hospital as a witness. The defense objected to testimony of this witness on the ground that her name was not on the list of government witnesses. The government then withdrew the witness and did not attempt thereafter to offer the medical report into evidence. Later, during the course of the trial, out of the hearing of the jury, defense counsel told the prosecutor that if he could see the hospital records "it might be possible that we would be able to stipulate the records * * *." Neither party pursued the matter thereafter. We note that the defense could have examined these records as a matter of right either before or during trial by taking appropriate steps, assuming the prosecution resisted an informal request. See Fed.R.Crim.P. 16, 17(c); D.C.Code Ann. § 14–308 (1961).

■ In the prosecutor's closing argument the following comment was made to the jury:

> "Now, ladies and gentlemen, something has been said about medical evidence in this case. You heard me bring a person in here from D.C. General Hospital with the records from D.C. General Hospital, and the defense counsel jumped up and objected to the records sight unseen. I don't have to say anymore about that. They have to concede the records—"

Defense counsel made timely objection to the prosecutor's remark, thereby preserving the question for purposes of appellate review.

In the course of their deliberations, the jury sent a note to the trial judge requesting, among other things, that they be allowed to see the medical report. This request was properly denied for the obvious reason that the report was not in evidence in the case. This episode suggests the jury considered that the medical report was of some importance to the decision they were required to make.

After the jury had sent in its request for the medical report, defense counsel moved for leave to see it. The prosecutor objected, and the court denied the motion. The court's ruling was plainly correct since the records were not in evidence. The prosecutor then said, "I might say, Your Honor, for the sake of the record, this record would not reflect very much. It would indicate that the doctor did not find any evidence of rape." He explained that he had planned to offer medical testimony to explain why there had been no evidence of trauma.

The likely impact of the prosecutor's remark in his closing argument emerges when one considers that the medical report was not in evidence and its contents were unknown to the jury. It is possible if not probable that the prosecution's references to the medical report conveyed the impression—contrary to the fact—that the report was helpful to the prosecution and damaging to the accused and that by the invocation of a technical objection the defense had prevented the jury from considering important information. In the context of this trial on a charge of rape, a capital offense, the remarks of the prosecutor were improper and prejudicial and require a new trial.

Since a new trial must be had it is incumbent upon us to treat two other points raised by appellant because they may arise on retrial.

■ Appellant contends that it was error to receive the testimony of the complainant's mother relating to the telephone call made by complainant immediately after the alleged attack. This testimony was properly received in evidence. Murphy Auto Parts Co. v. Ball, 101 U.S. App.D.C. 416, 249 F.2d 508 (1957), cert. denied, 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958); Wheeler v. United States, 93 U.S.App.D.C. 159, 211 F.2d 19 (1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954). See also Wabisky v. D.C. Transit System Inc., D.C.Cir., 309 F.2d 317 (1962).

■■ Appellant took the stand in his own behalf. The thrust of his testimony was that although he had relations with the prosecuting witness it was with her consent. On cross-examination, the government, in an effort to impeach his credibility asked appellant about the contents of an affidavit he executed pursuant to Rule 17(b), Fed.R.Crim.P.[2] The prosecutor was allowed to read the contents of that affidavit to the jury. In pertinent part it stated:

> "That the testimony he or they [the witnesses] is expected to give if subpoenaed is to establish that I was not present at the scene of the crime, at the time it was allegedly committed.
>
> "Third. That the evidence of the witness or witnesses is material to the defense because it will establish my alibi."

Defendant's objection to the use of the affidavit was overruled. We are advised on this appeal that the affidavit was prepared by court appointed counsel after consultation with his client.

The appellant argues that the trial court erred in allowing the government to use the affidavit for impeachment purposes because the statement was "compelled testimony" and hence violates his right against self-incrimination. This contention would be well founded if appellant had been *compelled* to make the statements in the affidavit.[3] It is true that appellant was required to make a showing before the court below that he needed the named witnesses, the testimony they were expected to give, that their testimony would be relevant to the issues being tried and that he was unable to pay the costs of securing the witnesses. This showing is required by Rule 17(b) to screen out frivolous requests for witnesses. Murdock v. United States, 283 F.2d 585 (10th Cir. 1960); Reistroffer v. United States, 258 F.2d 379 (8th Cir. 1958), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959); cf. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Appellant was called upon to make a showing which a non-indigent is not required to make, but he was not compelled to make a false statement.[4] On this record appellant has stated under oath once that he was present at the time and place of the alleged criminal act and once that others would swear he was

2. "Indigent Defendants. The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant. The motion or request shall be supported by affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness. If the court or judge orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

3. Tucker v. United States, 151 U.S. 164, 14 S.Ct. 299, 38 L.Ed. 112 (1894), while factually distinguishable supplies a rationale consistent with the conclusions we now reach. There the Court held a defendant's affidavit made to secure subpoenas for his witnesses at government expense could be used to impeach his trial testimony. Objection was made by Tucker on the grounds the material was barred as being a "pleading of a party" or evidence obtained by discovery and hence was inadmissible under a statute proscribing use of such matter in a criminal case.

4. At this stage we have no way of knowing whether appellant swore falsely in his affidavit or in testifying on trial; however, it is impossible for both stories to be true. The appellant's indigency, even under the beneficent rule in Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962), gives him no privilege to lie, either on the stand or in an affidavit filed with the court.

elsewhere at that time. These statements are mutually inconsistent on their face. The issue is not which statement was the truth but narrowly whether the appellant was a truthful witness. It goes directly to the issue of appellant's credibility; it is not a broadside impeachment by showing bad character.[5] For the limited purpose of impeaching the appellant through his inconsistent statements under oath the trial court properly overruled objection to the impeachment use of the affidavit. See Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960).

The holding in Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954), is not directly in point but its underlying rationale is dispositive of appellant's claim. Here as in Walder "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." An indigent is indeed "compelled" to make a showing he lacks resources or assets in order to have the court appoint counsel, supply witness fees and filing costs, but if it develops that he has a large bank account can it be thought he can successfully prevent impeachment for his false statement to the court?

An accused is not compelled to testify but if he does he is "compelled" to tell the truth at the risk of impeachment by what he has said on some other occasion, as, for example, in a tax return he was "compelled" to file. Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L. Ed. 1054 (1926); Leeby v. United States, 192 F.2d 331, 334 (8th Cir. 1951). That he may be indicted for perjury also, is beside the point. In many contexts a citizen is compelled to give information to his government; tax returns,[6] passport applications, affidavits in litigation, are but a few. But he is also *compelled* in another sense to tell the truth or bear the consequences, one of which is to suffer impeachment as a witness. The falsehood in the instant case, whether in the affidavit or in the witness chair, constituted a grave obstruction to the administration of justice and it would be intolerable if appellant could assert any bar to its use to test his veracity.

Reversed and remanded for a new trial.

J. SKELLY WRIGHT, Circuit Judge (concurring in part and dissenting in part).

The overriding question presented by this appeal is: may an affidavit filed by an indigent defendant in a criminal case as required by Rule 17(b)[1] to subpoena

5. Offering the affidavit in evidence in the government's case in chief to prove guilt would present totally different problems. Walder v. United States, 347 U.S. 62, 65–66, 74 S.Ct. 354, 98 L.Ed. 503 (1954), would seem to preclude such use. In this case each of the two conflicting statements was inherently exculpatory rather than incriminating. The dissent incorrectly states that the government's contention in this case is that appellant's affidavit "may be used *against* him in a trial for his life." More precisely, the government sought to use appellant's prior statements for impeachment only and now asks us to sustain that use. It does not urge that the evidence be allowed as evidence in chief. We note also that by its very nature appellant's affidavit reflects nothing as to guilt or innocence, but reflects only on credibility. Nothing in the instant case resembles the "compulsory

discovery" or "compelling the production of his private books and papers, to convict him of crime," alluded to by the dissent.
6. The Supreme Court has approved the government's use of compelled tax returns as evidence in chief in prosecutions for the crime of tax evasion. Holland v. United States, 348 U.S. 121, 133, 75 S. Ct. 127, 99 L.Ed. 150 (1954). A fortiori the compelled tax return may be used for the limited purpose of impeaching the taxpayer's *credibility as a witness in his own behalf*. Leeby v. United States, 192 F.2d 331, 334 (8th Cir. 1951). Cf. Jackson v. United States (1), 48 App.D.C. 269 (1919) (Affidavit in support of a motion to sever by one co-defendant properly allowed for impeachment when that co-defendant chose to become a witness.)

1. F.R.Cr.P., 18 U.S.C.A. Rule 17(b) is a recognition that the Sixth Amendment

witnesses at Government expense be used against him at his trial. Rule 17(b) provides that the defendant in his affidavit "shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness."

Rule 17(b) apparently presents an indigent with Hobson's choice: either make no defense or disclose his whole case to the Government before his trial.[2] It is questionable whether in 1962 this choice meets the current standard[3] of due process considered in the light of the Fifth Amendment injunction: "No person * * * shall be compelled in any criminal case to be a witness against himself." Be that as it may, the accused here, unlike John Lilburne,[4] has already

executed the affidavit and we must decide whether it was properly used against him. I believe it was not.

Appellant's[5] Rule 17(b) affidavit, prepared by his counsel but signed by him, recited:

"2. That the testimony which he (or they) is expected to give, if subpoenaed, is:

"To establish that I was not present at the scene of the crime at the time it was allegedly committed.

"3. That the evidence of the witness or witnesses is material to the defense because

"It will establish my 'Alibi' "

Apparently the witnesses subpoenaed would not establish his alibi. In any event, they were not called. But the accused was confronted with his affidavit when he took the stand and testified that he was indeed at the scene of the crime.[6] Over objection, the affidavit was admitted into evidence. I would hold this was er-

right "to have compulsory process for obtaining Witnesses in his favor" applies to indigents too.

2. See Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), in which the Court held that a defendant could not be required under Rule 41(e), F.R.Cr.P., to admit ownership of narcotics in order to exercise his rights under the Fourth Amendment.

3. See Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); Griffin v. People of the State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

4. Lilburne refused to take an oath before the Council of the Star Chamber to answer charges of importing seditious books. He was condemned to be whipped and pilloried for his "boldness in refusing to take a legal oath." The prosecution of Lilburne resulted in the establishment of the privilege against self-incrimination as part of the common law. See Griswold, The 5th Amendment Today, p. 3.

5. Appellant was convicted on two counts of an indictment charging housebreaking

with intent to assault and rape. D.C. Code § 22–1801 and D.C.Code § 22–2801. Appellant admitted intercourse but testified that it was a consensual professional relationship of some duration costing $25 per episode. He stated that the victim screamed after the act when she learned he had only $17. The medical report on the victim, *which was not in evidence,* showed intercourse but, *unknown to appellant or his counsel,* was negative as to other signs of rape. The jury convicted appellant of rape but did not recommend the death penalty as the statute permitted. The maximum penalty otherwise is 30 years. The trial court sentenced appellant to 3 to 10 years on each count, to run concurrently.

6. The Government was not surprised by his testimony. Appellant filed a second Rule 17(b) affidavit which stated in part: "They [the witnesses to be subpoenaed] will corroborate the defendant's testimony as to what he was doing the day in question, and his previous relationship with the complaining witness." Government trial counsel, before trial, was fully aware that appellant's defense would be, not alibi, but consent on the part of the victim.

ror [7] and reverse for a new trial on this ground.

After Coppedge v. United States, supra Note 3, it need hardly be asserted that under our law indigency is not a penalty in a criminal case, that the right to constitutional protection is not a reflection in a net worth statement, and that courts stand to protect the rights of the accused irrespective of his station in life or his alleged crime.[8] But this high purpose to provide equal justice under law, to provide an indigent with the means for making his defense as a matter of right, would fail of its goal if he is otherwise limited in making that defense. Securing for indigents the means of defense cannot be achieved by sacrificing his broader rights common to all Americans. If an accused, rich or poor, is entitled to a defense under our law, then a man's poverty cannot weigh in the scales against him. It cannot give the prosecution a greater advantage in the already unequal struggle.

To obtain witnesses under Rule 17(b), the indigent is compelled to tell the Government, under oath, who they are, where they live, and what they will testify to. In addition, the defendant, in his affidavit, "shall show that the evidence of the witness[es] is material to the defense, that the defendant cannot safely go to trial without" them. Not only must the accused speculate as to what the witnesses will say, but he must explain, under oath, the materiality of the testimony to his defense. And now the Government argues [9] that the affidavit compelled under Rule 17(b) may be used against him in a trial for his life.

Almost 100 years ago the Supreme Court had something to say with reference to compelling oaths. It bears repeating now. "And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power; but it cannot abide the pure atmosphere of political liberty and personal freedom." Boyd v. United States, 116 U.S. 616, 631–632, 6 S.Ct. 524, 532–533, 29 L.Ed. 746 (1886).

In this same Boyd case, relying on an Act of Congress rather than, as here, a Rule of Criminal Procedure, the Government sought to make palatable merely a questionable infringement [10] of a party's rights under the Fifth Amendment.

---

7. Whether a prosecution for perjury may be predicated on a false affidavit is not before this court. See Pothier v. Rodman, 261 U.S. 307, 309, 43 S.Ct. 374, 67 L.Ed. 670 (1923).

8. In Griffin v. People of the State of Illinois, supra Note 3, at 16–17, at 589 of 76 S.Ct., in upholding the right of the indigent to equal justice, the Court stated:

"Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. * * * In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. * * *"

9. The Government relies on Tucker v. United States, 151 U.S. 164, 14 S.Ct. 299, 38 L.Ed. 112 (1894), interpreting Section 860, Revised Statutes, which reads:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture: Provided, that this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering or testifying as aforesaid."

While Tucker factually seems to be on all fours with this case, the constitutional point was neither raised nor decided there.

10. Boyd was a forfeiture proceeding under the then existing internal revenue (custom) laws, Act of June 22, 1874, § 12,

Alertly, the Court struck it down. "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed." Id. at 635, at 534 of 6 S.Ct.

Rule 17(b) humanely provides for the defense of indigents. Obviously, criminal rules which failed in this regard would not pass the constitutional test.[11] But the indigent's Sixth Amendment right to "compulsory process for obtaining witnesses" would mean little indeed if he were required to barter away his rights under the Fifth Amendment to exercise it.[12] The rights of indigents, so lately won, may not so soon be eroded. Even if it were held that constitutionally a defendant may be compelled to file an affidavit to obtain Rule 17(b) rights, constitutionally that affidavit may not be used against him at his trial.[13]

18 Stat. 186 et seq., involving 35 cases of plate glass allegedly illegally imported. Under § 5 of the Act Boyd was ordered to produce the invoices for the plate glass or explain his refusal or inability. Under the Act, non-compliance with the court's order was a confession that the plate glass was contraband. Equating the forfeiture proceedings with a criminal prosecution, the Court held § 5 unconstitutional because, among other things, it compelled Boyd to be a witness against himself.

11. Also in Griffin v. People of the State of Illinois, supra Note 3, at 19, at 590 of 76 S.Ct., the Court stated:
"* * * Such a denial [of equal justice because of indigency] is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law. There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. * * *"

12. The court in its opinion cites cases holding that a defendant's income tax returns may be used in evidence against him. But, while the filing of a return is

required, privileged disclosures in the return may not be compelled where there is timely invocation of the Fifth Amendment. See United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927); Shushan v. United States, 5 Cir., 117 F.2d 110, 117, 133 A.L.R. 1040 (1941). Moreover, all persons with a gross annual income of $600 or over are required to file income tax returns. Under Rule 17(b) only indigent defendants who desire to exercise their Sixth Amendment right to compulsory process for obtaining witnesses are required to file the affidavit.

13. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), does not require a different result. Here, unlike Walder, appellant did not "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." Id. at 65, at 356 of 74 S.Ct. Nor is Tate v. United States, 109 U.S. App.D.C. 13, 283 F.2d 377 (1960), controlling since there the prior statement used for impeachment was made voluntarily.