Bernard SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17959.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 5, 1963.

Decided April 23, 1964.

Messrs. Jo V. Morgan, Jr., and Gilbert Hahn, Jr., Washington, D. C. (both appointed by this court), with whom Mr. Mark B. Sandground, Washington, D. C., was on the brief, for appellant.

Mr. William H. Willcox, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, DANAHER and McGOWAN, Circuit Judges.

DANAHER, Circuit Judge:

On appellant's first appeal from a conviction of housebreaking and rape, we

reversed because of the prosecutor's prejudicial references in closing argument to a medical report not in evidence. A second trial also resulted in convictions on both counts.

■ Appellant now contends the trial judge should have granted his motion for acquittal because of allegedly insubstantial corroboration of the complainant's testimony. We do not agree, for we are satisfied that ample evidence was presented upon which the jury might properly find corroboration [1] of the complainant's version of the occurrences.

■ Appellant also attacks a ruling with respect to evidence which tended to impeach his credibility. He had testified at trial that the complaining witness had consented to his having relations with her. On cross-examination, the Government produced appellant's pretrial affidavit prepared in support of his motion for the issuance of subpoenas. Rule 17(b) [2] spells out the requirements for the showing which an indigent defendant must make. Appellant accordingly had sworn that he expected "to establish that I was not at the scene of the crime at the time it was committed" and that the evidence he sought was material to his defense "because it will establish my alibi." [3] Under such circumstances, use of the affidavit for purposes of impeachment was again permitted at the second trial following this court's decision on appellant's first appeal.[4] That opinion is controlling here; indeed, we may note that after the instant appeal had been filed, this court denied appellant's motion for a hearing *en banc* as to this very issue.[5]

■ Finally, the appellant claims error in the denial of his motions for a mistrial. He argues that he was prejudiced by a ruling which permitted a showing that at the first trial he testified his income was derived, in part at least, from "writing numbers."

The transcript shows that just before the first trial got under way according to the appellant's testimony during that trial, he abandoned his intended defense of alibi and decided that he was "going to set up a defense of consent." In aid of his position, the appellant testified that on each of two occasions he had paid the complaining witness $25 to secure her consent to relations with him. His lawyers had asked, he testified, how he was able to have available $25 out of a salary of $65 per week.

"Q. What did you tell them?

"A. I told them I was making money, getting numbers. I was writing numbers and everything, making money extra.

"Q. You were writing numbers and everything, what else besides the numbers were you doing to make money?

"A. Making money any kind of way, make money.

"Q. Any kind of way so long as you made it; is that right?

"A. That's right."

That testimony was given without objection; perhaps as a matter of trial tactics, the defense thought it strengthened the appellant's claim.

At the second trial the appellant again took the stand and testified in great detail. It was brought out that he had been convicted of robbery in the District of Columbia on February 22, 1952, and was imprisoned at Lorton, as he put it, for "five years, five months and seventeen days." At some point following his release, the appellant's wife, mother of the complaining witness, went elsewhere

---

1. Walker v. United States, 96 U.S.App. D.C. 148, 152, 154, 223 F.2d 613, 617, 619 (1955).

2. FED.R.CRIM.P.

3. Appellant admitted that he had lied to his attorneys when he claimed to them that the wanted witnesses would establish his alibi.

4. Smith v. United States, 114 U.S.App. D.C. 140, 312 F.2d 867 (1962).

5. And see Tucker v. United States, 151 U.S. 164, 168–169, 14 S.Ct. 299, 38 L.Ed. 112 (1894); cf. Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

to reside. The appellant commenced living with a woman named Jones. He testified that on one occasion he left her bed in the middle of the night to bring food to the complaining witness, and then had relations with her for which he paid nothing. As at the first trial, he testified he had paid her $25 on each of two occasions to engage in intercourse with him.

In the evening before the crime, according to the appellant, he had taken his stepdaughter to ride in his automobile, had procured whisky for her and had bought a sandwich for her. On the night of the crime he handed her a roll of bills which she put under the pillow. After relations with her, she discovered that he had paid her only $17. Then, she began to scream and threatened him with a butcher knife, and her complaint followed. Such was the nature of his claim of "consent" which developed into an outcry only because he lacked $8, he testified.

On cross-examination, it was developed that he knew the complaining witness had three small children in the house and was then four months pregnant by her husband who had left for overseas service in the Navy. Answering the prosecutor's questions, the appellant admitted various convictions in South Carolina in 1935,[6] in Spartanburg for burglary in 1936; in the District of Columbia for robbery in 1952. He testified that he was earning $65 per week. He was then asked: "Was it a little steep for you to pay Mrs. Taylor $25 when you had sexual relations with her?" "No, sir," he answered, explaining that he had other "income" from loans. Further cross-examination on various details as to appellant's financial situation led to his saying he tried to borrow additional funds from a co-worker to whom he identified his stepdaughter as the intended recipient. Still bearing

upon the appellant's claim of having paid $25 for intercourse with his stepdaughter, the prosecutor asked:

"Q. By the way, you have other income, haven't you?

"A. What kind of income?

"Q. Oh, you write numbers, don't you?

"A. *No, sir.*" (Emphasis added.)

Upon objection by defense counsel the judge struck the question and the answer.

Promising to connect up the subject matter, the prosecutor then with the transcript of the first trial at hand, undertook question and answer references to the appellant's testimony at the first trial. The defense moved for a mistrial which was denied. At a bench conference the trial judge observed to appellant's attorneys: "When someone has beeen convicted of all the things he has been convicted of, it seems to me answering a question of numbers is of no significance at all." The judge explained that when the earlier ruling was made "I did not know that he had given testimony saying that he did write numbers."

Because of the deference due to the views of our colleague, we have carefully considered the entire record in this case.[7] We are convinced that no substantial rights of this appellant were affected. As the trial judge remarked, *supra*, it is inconceivable that the jury would have given more than the slightest weight to this appellant's admission that at the first trial he had testified to having engaged in "writing numbers." [8] Rule 52 [9] provides that any "error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." We are satisfied that even were we to say that the judge here had

6. "I was convicted when I was a young boy of robbery."

7. Kotteakos v. United States, 328 U.S. 750, 762, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

8. Cf. United States v. Boyer, 80 U.S.App. D.C. 202, 203, 150 F.2d 595, 596, 166 A.L.R. 209 (1945).

9. FED.R.CRIM.P.

erred, the ruling could have had only slight effect.[10]

Affirmed.

FAHY, Circuit Judge (dissenting):

The decision of this court when the case was here before, Smith v. United States, 114 U.S.App.D.C. 140, 312 F.2d 867 (1962), sustains the admissibility for impeaching purposes of the affidavit of appellant under Rule 17(b). Except for the controlling effect of the prior decision I would reconsider the question.

As to the admission at the trial now under review of the evidence that appellant had engaged in "writing numbers," the Government quite correctly, as it seems to me, at least inferentially concedes error. It contends, however, that the evidence was harmless, pointing out that it pertained merely to the credibility of appellant, and urging that his credibility was so strongly challenged by other evidence that the jury could not have been prejudiced.

The issue of guilt depended primarily upon whether the jury believed the complaining witness or the accused. The crux of the case was credibility. Defendant had not been convicted of "writing numbers," and testimony that he engaged in doing so was not competent for the purpose of impeaching his credibility. Yet in the prosecution's cross-examination of appellant the following occurred: "By the way, you have other income, haven't you? A. What kind of income? Q. Oh, you write numbers, don't you? A. No, sir, I don't." Defense counsel objected. The court sustained the objection and struck the remark, and struck the question about numbers. The prosecutor nevertheless persisted. He recalled to appellant his testimony at the previous trial regarding his sources of income and asked if he did not then say something about "writing numbers." Defense counsel moved for a mistrial, pointing out that the court had warned counsel not to bring this out. Since the evidence was incom-

petent, and had no relevance to the case on trial, the fact that appellant at the earlier trial had said something about "writing numbers" could not render it relevant and material. The court denied the mistrial, but sustained the objection. Counsel rephrased the question, and again recalled the testimony at the first trial, leading up, again, to the same testimony about writing numbers. Objection was again made. A bench conference followed, at which the prosecutor said, "I am impeaching this man on his former testimony," which of course could not be done because (1) impeachment cannot be based on evidence which was admitted at a previous trial but which was properly objected to in this trial as incompetent; (2) there as no conviction of "writing numbers" so that evidence of "writing numbers" was not competent impeaching evidence at the second trial any more than it was at the first. The trial court at this point, however, said it did not know of the testimony at the first trial about writing numbers, and added that as to one who had been convicted of other offenses as often as appellant it seemed that answering the question about numbers was of no significance. Defense counsel, in maintaining his objection, pointed out that there was no purpose except impeachment. The prosecutor acquiesced, saying, "I want to impeach him." He explained again that his purpose was impeachment. Defense counsel pointed out that it was an attempt to prove a crime of which defendant had not been convicted, to which the prosecuting attorney responded, "It goes to his credibility" and shows his character—that he would make a nickel any way he could make one. The objection was overruled. There followed a lengthy review before the jury of appellant's testimony at the earlier trial and his answers about "writing numbers."

It will be seen from the foregoing that the prosecuting attorney was determined to use this evidence to impeach appellant. The prosecutor obviously deemed it of

10. Campbell v. United States, 85 U.S.App. D.C. 133, 176 F.2d 45 (1949); cf. Beas- ley v. United States, 94 U.S.App.D.C. 406, 218 F.2d 366 (1954).

critical importance in convincing the jury that the complaining witness rather than the accused should be believed.

I am unwilling to hold that the prosecutor was wrong about the importance the jury might attach to the evidence. I cannot conclude the jury was not influenced by evidence which the Government insisted should be admitted for the very purpose of influencing the jury on the issue of credibility, upon which issue turned the issue of guilt. This evidence may have been just the added factor that turned the scales against appellant. The prosecution was quite anxious that the case should not go to the jury without it.

A conviction aided by such incompetent and prejudicial evidence, duly objected to, should not be sustained on the supposition the evidence did not affect the result.

I would reverse and remand for a new trial on the admissible evidence.